Gary R. Selvin, State Bar No. 112030
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:    (510) 874-1811
Facsimile:    (510) 465-8976
E-mail:   gselvin@selvinwraith.com
E-mail:  devans@selvinwraith.com

Attorneys for Defendants
Centennial Insurance Co. and Atlantic Mutual Insurance Co.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| DALE M. WALLIS, D.V.M., JAMES L. WALLIS, and HYGIEIA BIOLOGICAL LABORATORIES, INC. a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTENNIAL INSURANCE COMPANY, INC., a New York corporation; ATLANTIC MUTUAL INSURANCE CO., INC., a New York corporation,<br><br>Defendant. | Case No.: 2:08-CV-02558-WBS-GGH<br>*related to CIV-S-93-01322 WBS*<br><br>**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO STAY**<br><br>Complaint Filed:  October 27, 2008<br><br>Date:    January 30, 2012<br>Time:   2:00 p.m.<br>Judge:  Hon. William B. Shubb<br>Dept.:   5, 14th Floor |

# TABLE OF CONTENTS

<u>Page(s)</u>

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS........................................................................................3

III. LEGAL ARGUMENT ............................................................................................6

 A. The Federal District Court Has The Authority To Stay This Action............................6

 B. The New York Supreme Court's Order Of Rehabilitation Bars Action
  Against Atlantic Mutual And Centennial .......................................................7

  1. California Statutory Law Requires Plaintiffs to Present Their
   Claims Against Defendants In New York Alone...................................7

  2. The UILA Is Intended To Bring Order To The Liquidation Of
   Insolvent Insurers.......................................................................9

  3. Courts Throughout the Country Honor Sister States' Orders
   Stating Litigation Against Insurers In Rehabilitation ........................11

  4. Hawthorne v. Reliance Does Not Compel This Court To Reject
   Defendant's Request For A Stay..................................................13

  5. Other Courts Have Ordered The Stay Of Litigation Against
   Atlantic Mutual .......................................................................14

 C. Defendants Will Be Irreparably Harmed If The Requested Stay Is Not
  Granted.................................................................................17

  1. The Costs Of Litigation To Defendants Are Monumental And
   Are A Primary Concern Of The Liquidation Process Under The
   UILA .....................................................................................17

  2. Plaintiff Would Not Suffer Any Harm From A Stay, Whereas
   Defendants Will Suffer Significant Harm Is A Stay Is Not
   Ordered .................................................................................18

IV. CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Bonding Co. v. Coastal Metal Sales, Inc.*
  679 So.2d 1250, 1252-1253 (Fl.App. 1996) ...............................................................12

*Atlantic Mutual Ins. Co. v. Superior Court (Ins. Co. of the West)*
  Docket No. A130428 (Jan. 20, 2011) ..........................................................................16

*Ballesteros v. New Jersey Property Liab. Ins. Guar. Ass'n*
  530 F.Supp. 1367 (D.NJ.) ...........................................................................................15

*CMAX, Inc. v. Hall*
  300 F.2d 265, 268 (9th Cir. 1962) .................................................................................6

*Connecticut v. Lombardo Brothers Contractors, Inc.*
  S.C. 18462/S.C. 18463 (Dec. 8, 2010) .......................................................................17

*Ex parte Gregory v. Serio*
  893 So.2d 1148, 1151 (Ala. 2004) ..............................................................................12

*Fuhrman v. United America Insurors*
  269 N.W.2d 842 (Minn. 1978) .....................................................................................14

*G.C. Murphy Co. v. Reserve Ins. Co.*
  54 N.Y.2d 69, 78 (N.Y.App. 1981) .............................................................................12

*Hawthorne Savings Bank FSB v. Reliance Ins. Co. of Illinois*
  421 F.3d 835 (9th Cir. 2005) .......................................................................................14

*Hoiness-LaBar Insurance v. Julien Construction Co.*
  743 P.2d 1262 (Wyo. 1987) .........................................................................................14

*Integrity Ins. Co. v. Martin*
  769 P.2d 69, 70 (Nev. 1989) ........................................................................................11

*Katrinecz v. Zippy Technology Corp.*
  2010 U.S. Dist. LEXIS 113909 (E.D.Tex. Oct. 26, 2010) ..........................................17

*Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.*
  864 F.2d 1033, 1041 (3d Cir. 1988) ............................................................................16

*Landis v. N. Am. Co.*
  299 U.S. 248, 254 (1936) ...............................................................................................6

*Lawrence v. Illinois Life and Health Guar. Ass'n*
  688 N.E.2d 675, 680 (Ill.App. 1997) ..........................................................................12

*Levin v. National Colonial Ins. Co.*
  806 N.E.2d 473, 476 (N.Y. 2004) .................................................................................7

*Lockyer v. Migrant Corp.*
  398 F.3d 1098, 1112 (9th Cir. 2005) .............................................................................6

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

**Page(s)**

*Morris v. Jones*
   329 U.S. 545 (1947)..................................................................................10, 11

*Nasef v. U&I Investments, Inc.*
   755 P.2d 136, 138 (Or.App. 1988)..........................................................12

*Superintendent of the Ins. of the State of New York v. Int'l Equip. Leasing, Inc.*
   588 A.2d 883, 885-886 (NJ. Super.Ct. App.Div. 1991) ...........................11

*Vane Line Bunkering, Inc. v. Atlantic Mutual Ins. Co.*
   2011 U.S. Dist. LEXIS 16461 (E.D.Pa. Feb. 18, 2011) ...............16, 17, 18

*Vlasaty v. Avco Rent-A-Car System, Inc.*
   304 N.Y.S.2d 118 (1969).............................................................................9

*Wilton v. Seven Falls Co.*
   515 U.S. 277 (1995)...................................................................................6

**Statutes**

Insurance Code
   § 1011...........................................................................................................8

Insurance Code
   § 1064.3........................................................................................................8

Insurance Code
   §§ 1064.1-1064.12...................................................................................3, 7

**Other Authorities**

"Stopping Out-of-State Litigation Against an Insurer Subject to Insolvency
   Proceedings A Tool for Practitioners".....................................................14

57 Rutgers L. Rev. 1377 (Summer 2005) .....................................................13

*Drazen v. Atlantic Mutual*
   *C*ase Number 10cv01371.....................................................................15, 17

http://www.nylb.org/Documents/Fremont-A.pdf .........................................9

*In re: Asbestos Products Liability Litigation (No. VI)*
   Case No. 08-76815................................................................................15, 17

Tort & Insurance Law Journal, Spring 1998, 23 Tort & Ins. L. J. 604..............12

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

# I.   INTRODUCTION

Defendants Atlantic Mutual Insurance Company and Centennial Insurance Company (collectively, "Defendants") are in liquidation in the state of New York, their state of domicile.  The liquidation is proceeding under Orders of Liquidation issued by the Supreme Court of New York that vest in the Superintendent of Insurance of New York all ownership and control of Defendants' assets.  Under the Orders of Liquidation, all legal actions against Defendants are enjoined and barred, and any outstanding claims against Defendants must be presented to the New York Liquidation Bureau, and any settlements must be approved by the New York Supreme Court.

These Orders are consistent with the Uniform Insurers Liquidation Act ("UILA") enacted in both California and New York.  Under the UILA, claimants such as Plaintiffs are required to pursue their claims against Defendants in New York.

Plaintiffs have submitted their claim in New York, and it is being processed by the New York Liquidation Bureau.  Plaintiffs also concede a stay of this action is warranted.  However, the Court has expressed reluctance to stay this matter notwithstanding the parties' agreement that the New York Orders require a stay.  By this Motion, Defendants formally request that this Court stay this matter permanently.[1]

The issue presented is whether this Court, faced with an established identical statutory scheme in California and New York which addresses insurance company liquidations and which requires this claim to be presented to the Rehabilitator in New York, may disregard the Rehabilitation and Liquidation Orders, the statutory and decisional authority prohibiting prosecution of this action in a civil court located in California, and the well-established reciprocity between New York and California for insurance company liquidations, and then, independent of statutes and case law, force Defendants to waste their assets and litigate this lawsuit to judgment.  Insurance Code § 1064.5 and the Uniform Insurers Liquidation Act, which has been adopted by both states, prohibit the continued prosecution of this action, and compel the issuance of a stay as Defendants request.

---

[1]  Plaintiffs have proposed a stay of one year, after which the parties and Court can evaluate the progress of the New York Liquidation Bureau.  Because this is a liquidation, and one which will likely take years, Centennial believes this suggestion is impractical and legally unsupported.

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

1    The obligation of courts in California in the face of out-of-state orders regulating the

2    rehabilitation or liquidation of insurance carriers is an issue of great importance to insurers, and

3    directly affects policyholders' and claimants' substantive and procedural rights to obtain insurance

4    proceeds.  Moreover, the orderly rehabilitation of insolvent insurers should be the goal of courts in

5    California, as expressed in the statutory law of California and other states.  Absent a stay, this

6    litigation will interfere with the orderly administration of the rehabilitation of Defendants, obstructing

7    the New York insurance regulators' lawful efforts to preserve the assets of Defendants' estates for the

8    benefit of their shareholders, policyholders and claimants.  Without a stay, this matter will necessarily

9    result in multiple actions in multiple states, and place Defendants and their counsel in direct conflict

10   with the duly executed order of the New York court, forcing them to choose whether to be in

11   contempt of the New York court order or in contempt of a Federal District Court order to proceed

12   with the litigation.  Refusal to issue a stay will cause irreparable harm to Defendants, their

13   shareholders, policyholders and claimants, and create chaos in the rehabilitation process, the very

14   harm the New York court's order is designed to prevent, and the harm that California statutory law is

15   intended to avoid.

16   This matter presents an important and novel issue.  There is no published California appellate

17   case that addresses the rights of insolvent insurers and Rehabilitators on one hand and obligation of

18   California courts to recognize that order on the other, when faced with an insurer subject to a

19   liquidation order in another state that bars further litigation in California.  The only Ninth Circuit case

20   approaching the issue is not on point because it does not address the particular statute applicable to

21   this question.  Insurers undergo rehabilitation or liquidation with regrettable but notable frequency,

22   especially in the current economic climate.  Such proceedings have a profound and far-reaching effect

23   on policyholders, third-party claimants, courts, insurance companies, and regulators throughout the

24   United States.

25   Rejection of the dictates of the Uniform Insurers Liquidation Act may also directly impact the

26   willingness of other state's courts and insurance commissioners to honor orders issued by courts in

27   California and the California Department of Insurance.  Seemingly, refusing to issue a stay,

28   notwithstanding the existence of a uniform act in more than half the states, would permit courts

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

1  throughout the country to simply ignore the terms that appear throughout all of the statutes, including

2  California's own, and create their own separate and independent rules and regulations.

3      The principles articulated in the UILA, embodied in California Insurance Code §§ 1064.1 to

4  1064.12, and in case law across the country applying the UILA, make it clear that an action against an

5  insurance company that is under a rehabilitation order in a UILA-reciprocal state *may not proceed in*

6  *a civil lawsuit*.  New York and California have both enacted the UILA, and New York should expect

7  that California courts would observe the requirements of the statute just as New York has done in the

8  past with California court's orders.

9      Defendants will be manifestly prejudiced if this Court does not grant a stay in this matter.

10  The New York Supreme Court issued an order enjoining prosecution of this case and forbidding

11  wasting of Defendants' assets.  Absent a stay, Defendants will be subject to the prospect of preparing

12  for and conducting trial in direct contravention of an order of the Supreme Court of the State of New

13  York, and placing Defendants' counsel in the untenable position of proceeding toward trial in

14  violation of the New York court's order and without the agreement, assistance or cooperation of the

15  client.

16      This Court has within its power the discretion to make any order that will promote justice and

17  efficiency, so long as the potential harms to the parties are evaluated and balanced.  No harm will

18  befall any party if a stay is ordered, whereas harm to Defendants and the orderly process of justice

19  will occur without question if a stay is not ordered.

20      Accordingly, Defendants respectfully request that this Court issue an order staying this action.

21              **II.    STATEMENT OF FACTS**

22      Plaintiffs filed this action on October 27, 2008, alleging damages arising from Defendants'

23  refusal to pay defense fees and costs in connection with an underlying intellectual property action in

24  Yolo County, California.  On September 14, 2010, Judge Eileen Krakauer of the Supreme Court of

25  the State of New York executed an "Order of Rehabilitation of Atlantic Mutual Insurance Company"

26  and "Order of Rehabilitation of Centennial Insurance Company."  Under the terms of the Orders,

27  Atlantic Mutual and Centennial, domiciliaries of New York, were determined to be insolvent and

28  consented to the entry of an order of rehabilitation under New York insurance law.  The Orders also

3

contains the following provisions:[2]

   8.   The officers, directors, shareholders, members, depositories, trustees, policyholders,… of Atlantic Mutual…are permanently enjoined and restrained, except as authorized by the Superintendent, from: (i) wasting or disposing of or permitting to be done any act or thing that might waste or dispose of Atlantic Mutual's property; (iii) interfering with the Rehabilitator in the possession, control and management of Atlantic Mutual's property or in the discharge of his duties…

   9.   All persons are permanently enjoined and restrained from commencing or prosecuting any actions or proceedings against Atlantic Mutual…with respect to any claims against Atlantic Mutual;

   10.   All persons are permanently enjoined and restrained from obtaining preferences, judgments, attachments or other liens, or making any levy against Atlantic Mutual's assets or any part thereof. . .

On September 21, 2010, Defendants submitted a Notice of Rehabilitation Order to this Court (Doc. No. 122)[3] advising the Court and all parties that Atlantic Mutual and Centennial had been placed into rehabilitation by the Superintendant of Insurance of the State of New York, and requesting a stay of this action for 180 days.  On November 23, 2010, the parties submitted to this Court a Stipulated Request to Stay Action (Doc. No. 123), in which the parties stipulated to stay this action pursuant to the Rehabilitation Order until March 15, 2011.  On December 7, 2010, this Court executed an Order (Doc. No. 124) in furtherance of the Stipulated Request to Stay Action, staying this matter until March 15, 2011.

On April 27, 2011, the Supreme Court of the State of New York issued Orders of Liquidation as to Atlantic Mutual and Centennial, filed April 27, 2011, which supplanted the prior Orders of Rehabilitation of September 16, 2010.  The Orders of Liquidation also preserved in perpetuity the permanent injunctions initiated by the Rehabilitation Order.  The Orders of Liquidation, like the Rehabilitation Orders before them, includes several provisions directly relevant to the instant litigation.  These provisions are designed to preserve the remaining assets of Atlantic Mutual and Centennial as the insurers proceed through liquidation.

Section 5 of the Orders of Liquidation provide:

---

[2]  The Order of Rehabilitation of Atlantic Mutual is quoted herein; the Order of Rehabilitation of Centennial is identical but for the substitution of the name of the insurance company.

[3]  Defendants respectfully request that the Court take judicial notice of the documents on file in this matter, as identified by the document number assigned by the Court.

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

> The officers, directors, shareholders, members, depositories, trustees, policyholders, agents, servants, employees, attorneys, managers and affiliates of AMIC and all other persons other than the liquidator and his agents are enjoined and restrained from: (i) wasting or permitting to be done any act or thing that might waste AMIC's property; (ii) transacting the business of AMIC or disposing of AMIC's property, except as authorized by the Liquidator; (iii) interfering with the Liquidator in the possession, control and management of AMIC's property or in the discharge of his duties; and (iv) disclosing the name, address or contact information of AMIC's policyholders, or any other information that is proprietary to AMIC or not in the public domain, except as authorized by Liquidator.

Section 6 of the Orders of Liquidation provides:

> All persons are enjoined and restrained from commencing or prosecuting any actions or proceedings against AMIC, the Liquidator or the New York Liquidation Bureau, their present or former employees, attorneys or agents with respect to any claims against AMIC.

Section 7 of the Orders of Liquidation provides:

> All persons are enjoined and restrained from obtaining preferences, judgments, attachments or other liens, or making any levy against AMIC's assets or any part thereof.

On November 16, 2011, the parties filed a Joint Status Report in this action (Doc. No. 126), advising the Court of the Order of Liquidation.  The Joint Status Report advised further that Plaintiffs were willing to stipulate to an order continuing the Court's prior stay order for an additional year in order to monitor the New York Liquidation Bureau's activities.  In an effort to avoid the time and expense to all litigants and this Court that would be required to prepare for and respond to a motion to stay, Defendants requested that this litigation be permanently enjoined as Defendants believe is required by the Order of Liquidation.

At the Status Conference on November 28, 2011, this Court indicated that it would not order a stay of this action and sought a means by which this litigation could proceed notwithstanding the Order of Liquidation.  At Defendants' request, the Court permitted Defendants the opportunity to brief the relevant issues in a formal motion to stay.

/ / /

5

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

### III.   LEGAL ARGUMENT

**A.     The Federal District Court Has The Authority To Stay This Action**

Federal courts' authority to stay an action is "incidental to the power inherent in every court to control the disposition of the causes on its docket …"  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); see also *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  The district court may exercise its sound discretion in exerting this power to promote "economy of time and effort for itself, for counsel, and for litigants."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  In deciding whether to grant a stay, the Court must weigh the following competing interests: "possible damage which may result from granting a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, *supra*, 300 F.2d at 268; see also *Landis*, *supra*, 299 U.S. at 254-55.

While all three factors must be weighed, only when "there is even a fair possibility that the stay … will work damage to someone else [must] the party seeking the stay make out a clear case of hardship or inequity."  *Lockyer v. Migrant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (citations and internal quotations omitted).  Thus, while the party seeking a stay has the burden of proving that the stay is warranted, that burden is reduced when the opposing party will not incur any cognizable damage from a stay.

Under the circumstances presented in this matter, Plaintiffs not lose the ability to pursue their claims, and thus will not suffer cognizable damage, if this Court were to issue a stay in response to the New York court's injunction.  California statutes, in concert with uniform statutes adopted in other states, allow Plaintiffs to proceed with their claims against the insolvent and liquidated defendant insurers in New York, the state of liquidation.  Plaintiffs, in fact, are doing so.

The interests of justice would not be served by forging ahead with this lawsuit.  Plaintiffs' claims have been submitted to the New York authorities.  Allowing this litigation to proceed would be a costly exercise in futility, as the New York Superintendent of Insurance has control over all aspects of Defendants' assets, and the only means by which a claimant may gain access to those assets is by filing a claim in New York (as Plaintiffs have done).  Any vestigial litigation in California

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

will be a waste of the Court's and litigants' time, as the New York authorities will be under no

obligation, under the Orders of Liquidation, to abide by any judgments obtained in California.  And,

of course, it would be equally wasteful to this court, as there would be two separate ongoing lawsuits,

each addressing liability and damages of the insolvent defendants, and only one of those having any

bearing on the Superintendent of Insurance for the State of New York.

**B.     The New York Supreme Court's Order Of Rehabilitation Bars Action Against Atlantic Mutual And Centennial**

By the Orders of Rehabilitation and the subsequent Orders of Liquidation, the State of New

York has taken over the operations of Atlantic Mutual and Centennial and has enjoined all persons

and entities, including policyholders, from taking any actions affecting Atlantic Mutual's and

Centennial's assets. Specifically prohibited under the Orders of Liquidation is the initiation or

prosecution of any action or proceeding against Atlantic Mutual or Centennial. All persons are also

prohibited from "obtaining… judgments" against Atlantic Mutual or Centennial.  No one may

commence or prosecute any action against Atlantic Mutual or Centennial, or obtain a judgment

against Atlantic Mutual or Centennial.

**1.     California Statutory Law Requires Plaintiffs to Present Their Claims Against Defendants In New York Alone**

The Orders of Liquidation filed in New York invoke the terms and conditions of the Uniform

Insurers Liquidation Act ("UILA"), which has been enacted in California at Insurance Code §§

1064.1-1064.12.  The UILA was drafted by the National Conference of Commissioners on Uniform

State Laws to "resolve some of the complexities of liquidating an insolvent insurance company with

assets in multiple states."  *Levin v. National Colonial Ins. Co.*, 806 N.E.2d 473, 476 (N.Y. 2004).[4]

This matter involves a delinquency proceeding in another state against an insurance carrier that is

domiciled in that other State.  Insurance Code § 1064.5 addresses directly these circumstances:

> (a)     In a delinquency proceeding in any reciprocal state against an insurer domiciled in that state, *claimants against such insurer who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state, or with the domiciliary receiver*. All such claims shall be filed on or before

---

[4]  For out-of-state authorities, please see the Notice of Lodging, filed herewith.

7

the last date fixed for the filing of claims in the domiciliary delinquency proceeding.

   (b)   Controverted claims belonging to claimants residing in the state may either (1) be proved in the domiciliary status provided by the laws of that State, or (2), if ancillary proceedings have been commenced in the state, be proved in those proceedings. In the event that any such claimant elects to prove his or her claim in this state, he or she shall file his or her claim with the ancillary receiver in the manner provided by the law of the state for the proving of claims against insurers domiciled in this state, and he or she shall give notice in writing to the receiver in the domiciliary state ...

New York is a reciprocal state for purposes of the application of the Uniform Liquidation Act. See Table of Jurisdictions Wherein Act Has Been Adopted, 42A West's Ann. Ins. Code preceding § 1064.1, p. 347 (2005).  Section 1064.5 states clearly the options available to anyone wishing to present a claim against Defendants: file claims with an ancillary receiver in California or with the domiciliary receiver, the New York rehabilitator. Because no ancillary proceeding of rehabilitation has been initiated in California, Plaintiffs must file a claim in New York and prove their claims under the laws of New York.  Here, Plaintiffs have does exactly that, submitting their claim to the New York authorities in conformity with the UILA.

California statutory law provides a specific methodology by which California authorities may act on their own against non-resident insurers. Insurance Code § 1064.3 describes the conduct of delinquency proceedings against insurers not domiciled in the state of California.  Pursuant to that statute, if in ancillary receiver is to be appointed, the court shall appoint the commissioner.  At that juncture, the commissioner is vested with the requirement to act and file an application regarding the need or justification for ancillary receiver.  Under 1064.3(b), domiciliary receiver is vested by operation of law with all rights of action, and the ancillary receiver is required to promptly transfer assets to the domiciliary receiver.  Pursuant to Insurance Code § 1011, if the commissioner files a verified application, exercising his powers pursuant to that section, the Superior Court then, and only then, can proceed with regard to the insolvent insurer.  The State of California has not undertaken any of these actions against Defendants.

Indeed, New York honors rehabilitation proceedings initiated in California under the terms of the UILA.  This is not the first time that the issue of an ancillary receiver has arisen between

California and New York.  New York directed its resident claimants to comply with New York's

corollary to Section 1064.5 and proceed against a delinquent California insurer in California in

*Vlasaty v. Avco Rent-A-Car System, Inc.*, 304 N.Y.S.2d 118 (1969).  The same occurred with respect

to Fremont Indemnity, a California domiciliary, where New York had to exercise ancillary

receivership.  See, e.g., http://www.nylb.org/Documents/Fremont-A.pdf.  It would undermine the

demonstrated commitment of the courts of the two states to follow the requirements of the UILA

under Section 1064.5 or its equivalents to deny a stay in this matter.

The focus should not be on Section *1064.9*.  It prohibits actions to attach, garnish or execute a

judgment against the assets of an insurer subject to delinquency proceedings in another state.   That

section does not address whether the Plaintiffs are permitted to proceed with the instant litigation.

Moreover, to allow Plaintiffs to proceed with the present action but simply not execute on the

judgment exposes the danger of disregarding the full scope of the terms of the UILA.  An order

rejecting Defendants' request for a stay would subvert the orderly statutory scheme established by the

UILA in both California and New York to the detriment of other claimants, the Atlantic Mutual

estate, and the principle of uniform process.  Defendants and the New York rehabilitator would be

left with two undesirable outcomes: either depleting the assets available to pay covered claims by

defending the litigation or allowing a default judgment to be taken that might be entered for an

amount in excess of what might have resulted from a contested proceeding.  These options are in

conflict with the purpose of the UILA, which is why the UILA as enacted contains a provision

(Section 1064.5 in California) designed to prohibit this outcome.  To decline to order a stay would be

to give no weight to the numerous cases holding that the equivalent section in other states'

enactments of the UILA flatly bars any litigation against an insurer subject to delinquency

proceedings.[5]

### 2.   The UILA Is Intended To Bring Order To The Liquidation Of Insolvent Insurers

Uniformity and order in the liquidation of insurance companies is the underlying objective of

the UILA.  Because insurers are specifically exempt from federal bankruptcy law, the liquidation of

---

[5]  The distinction between rehabilitation and liquidation proceedings is irrelevant under the UILA.
The definition of "delinquency proceeding" includes both liquidation and rehabilitation proceedings.
*Insurance Code* § 1064.1(b).

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

1    insurance companies with competing claims nationwide and assets in multiple states at one time

2    presented complexities which were not resolved by any coordinating national-level regulation or

3    statute.  This led inevitably to jurisdictional disputes, as described in *Morris v. Jones*, 329 U.S. 545

4    (1947).  Cases such as *Morris* illustrate the unpredictability of the liquidation of insurance companies,

5    as each state with an interest in the assets of the company competed for the right to proceed against

6    those assets.  The enactment of the UILA in dozens of states brought order to the process.

7         *Morris*, decided in 1946, concerned an insurer that was placed into liquidation by authorities

8    in Illinois in 1938, before a claimant in Missouri could obtain a judgment in a lawsuit filed in 1934.

9    The Illinois liquidator ordered a stay of lawsuits against the insurer, and subsequently disallowed the

10   Missouri claimant's default judgment.  The United States Supreme Court decided the matter on the

11   principles of full faith and credit between courts of sister states.

12        Justice Frankfurter in dissent observed that interests other than the convenience of non-Illinois

13   claimants should be considered:

14              Against the claim that out-of-State creditors must be set not merely the
               interests of Illinois creditors, but also the importance of a unified
15              liquidation administration, the burden to the liquidator of defending
               suits anywhere in the United States, and the resulting hazards to a fair
16              distribution of the estate. To require the face value of the Missouri
               judgment of the Missouri claimant to determine his share out of the
17              Illinois fund might, of course, dilute the share in the Illinois assets that
               can go to legitimate Illinois claimants.

18

19        Presciently, Justice Frankfurter opined:

20              If the situation calls for correction by uniform regulation, Congress has
               the power to deal with the matter. Or the States might do so through the
21              various devices for securing uniformity of State legislation.

22        In fact, in 1939, the National Conference of Commissioners on Uniform State Laws sought to

23   address the complications arising from the liquidation of insurance companies with competing

24   claimants and assets located in multiple states by promulgating the Uniform Insurers Liquidation Act.

25   The United States Supreme Court could not consider the UILA in resolving the dispute in *Morris*

26   because the UILA did not exist at the time the Illinois stay was issued.  *Morris* has therefore become

27   an historical footnote to the instant matter, which is now governed by uniform statutes.  Justice

28   Frankfurter presciently recognized the need for uniformity through state legislation, which did not yet

1    exist in time to serve the litigants in *Morris*.

2              However, the basic policy issues identified by Justice Frankfurter, i.e., the importance of a

3    uniform liquidation procedure, the burden on the liquidator of defending suits throughout United

4    States, and the danger of inequitable distribution of the estate of the insurer, remain relevant.  The

5    UILA recognizes the relevance of these issues and provides a cogent and clear methodology for

6    managing insurance insolvencies, while providing an unambiguous methodology for treating fairly

7    and consistently claimants.  Without a stay in this matter, these important public policy

8    considerations will be undermined, all to the direct harm of Defendants and other claimants to

9    Defendants' estates.

10             States that have adopted the UILA, including New York and California, recognize that the

11   "orderly liquidation and distribution of assets of an insolvent insurance company requires a

12   centralized management of the delinquency proceeding in one state."  *Superintendent of the Ins. of*

13   *the State of New York v. Int'l Equip. Leasing, Inc.*, 588 A.2d 883, 885-886 (NJ. Super.Ct. App.Div.

14   1991).  Real Parties in Interest's disregard of the clear intent of the UILA would defeat the uniform

15   administration of claims against liquidated insurers, the very fault the UILA was designed to cure.  It

16   is imperative to consider the inevitable consequence of Real Parties in Interest's insistence on

17   allowing individual claims to be litigated in defiance of New York's stay order.

18        **3.    Courts Throughout the Country Honor Sister States' Orders Stating Litigation**
             **Against Insurers In Rehabilitation**
19

20             No state or federal case published in California addresses the application of Section <u>*1064.5*</u>.

21   Numerous states have enacted the Uniform Insurers Liquidation Act, however. Courts that have

22   examined their respective equivalents of Section 1064.5 have uniformly held that <u>*an action against*</u>

23   <u>*an insurance company that is under a rehabilitation order in a reciprocal state may not proceed*</u>.

24   See, e.g., *Integrity Ins. Co. v. Martin*, 769 P.2d 69, 70 (Nev. 1989) [existing claim against insurer

25   properly enjoined upon issuance of rehabilitation order in New Jersey under NRS 696B.320; claimant

26   "was required to prove his claim in New Jersey … Any other interpretation of the UILA would

27   frustrate its purpose 'to make uniform the laws of those states which enact it.'"]; *G.C. Murphy Co. v.*

28   *Reserve Ins. Co.*, 54 N.Y.2d 69, 78 (N.Y.App. 1981) [New York claimants required to file claims

against insurer in liquidation in Illinois under New York's UILA, Insurance Law §521]; *Nasef v. U&I Investments, Inc.*, 755 P.2d 136, 138 (Or.App. 1988) [claim against insurer should have been stayed due to delinquency proceeding in Indiana under ORS 734.270; "The statute could not be more clear. The existence of the delinquency proceeding in Indiana barred the further prosecution of this action"]; *American Bonding Co. v. Coastal Metal Sales, Inc.*, 679 So.2d 1250, 1252-1253 (Fl.App. 1996) [Florida claimant required to file claims against insolvent insurer in Arizona under Florida's UILA, Fla.Stat. §631.181(3)]; *Ex parte Gregory v. Serio*, 893 So.2d 1148, 1151 (Ala. 2004) [insurer in rehabilitation in New York entitled to stay in Alabama under Alabama UILA]; *Lawrence v. Illinois Life and Health Guar. Ass'n*, 688 N.E.2d 675, 680 (Ill.App. 1997) [claims of Illinois claimants against insurer in liquidation in California must be decided in California under Illinois UILA, 215 ILCS 5/221.4].

Numerous commentators agree that under the circumstances of his claim, the action against Defendants must be stayed.  A law journal article published in Tort & Insurance Law Journal, Spring 1998, 23 Tort & Ins. L. J. 604 provides a comprehensive overview of the Uniform Liquidation Act, which both California and New York have adopted, and case law nationwide.  As the article comments,

> Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court.
>
> Hence other courts, except when called upon by the Court of primary jurisdiction for assistance, are excluded from participation.
>
> *Id.*.

The author continues:

> These provisions envision that claims against an insurance company and liquidation will be resolved by presentation either in the proceedings in the domiciliary state or in ancillary proceedings.  The statute does not allow for resolution of claims in other forums
>
> …
>
> the decisions of the state courts which have construed the Uniform Act make clear that claims against insurance companies and liquidation may not be resolved by independent actions in the courts, but must be determined in accordance with either of the two alternative procedures presented in the Uniform Act.

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

1      *Id.*, Notes 3 through 13.

2          The author further recognizes that the liquidation court typically issues an injunction to and

3   enjoins all persons from bringing or further prosecuting any action against the insolvent insurer.  The

4   purpose is to prevent "premature or inequitable distribution of the insolvent insurer's assets and to

5   prevent delay, disruption and the waste of assets which would occur if the liquidator were required to

6   defend actions in any court where they were brought.  *Id.*, Notes 25 through 32.

7          The weight of authority dictates that the injunction must be honored.  "At least one court has

8   gone so far as to punish by contempt a party that sought to proceed in another court notwithstanding

9   the injunction."  *Id.*, Note 29, citing *Matter of Empire State Surety Co.*, 164 A.D. 586 (NY Sup.Court

10  1914.

11         Another commentator has stated, "The UILA and Model Act provides that claims against the

12  insurance company must be brought exclusively in the domiciliary state or the ancillary state if in

13  ancillary receiver is appointed."  57 Rutgers L. Rev. 1377 (Summer 2005).  The article recognizes the

14  uniformity of the UILA and the importance of recognizing the issuing state's injunction, consistent

15  with "the intent and text of the UILA or the Model Act, enacted by the interested states in the

16  litigation."

17      **4.      Hawthorne v. Reliance Does Not Compel This Court To Reject Defendant's**
18              **Request For A Stay**

19         This action should not be exempt from this well-established statutory scheme enacted to

20  ensure the efficient and orderly handling of troubled insurance companies.  To rule otherwise would

21  beg the question of how a _uniform_ act can be worthy of the name if it is not applied in a _uniform_

22  manner.

23         Section 1064.5 compels the result that this action must be stayed.  The Ninth Circuit case

24  *Hawthorne Savings Bank FSB v. Reliance Ins. Co. of Illinois*, 421 F.3d 835 (9th Cir. 2005) does not

25  compel a contrary result; the Ninth Circuit did not address Section 1064.5.  Nowhere in its analysis

26  does the Court even analyze the impact of Section 1064.5.  Moreover, the cases upon which

27  *Hawthorne* relies are similarly distinguishable.  In *Hoiness-LaBar Insurance v. Julien Construction*

28  *Co.*, 743 P.2d 1262 (Wyo. 1987), the Wyoming Supreme Court cites the section of Wyoming's UILA

barring attachment actions, but fails to cite Section 26-28-115, which is Wyoming's equivalent of Section 1064.5. *Fuhrman v. United America Insurors*, 269 N.W.2d 842 (Minn. 1978), also relied upon by the *Hawthorne* court, involves a claim against an insolvent insurer involving two states (Iowa and Minnesota) that have *not* enacted the UILA. As a result, the Minnesota Supreme Court had no occasion to consider the equivalent of Section 1064.5.

The article entitled "Stopping Out-of-State Litigation Against an Insurer Subject to Insolvency Proceedings A Tool for Practitioners" recognizes both the impact of Section 1064.5 and the fact that *Hawthorne Savings Bank FSB v. Reliance Ins. Co. of Illinois*, 421 F.3d 835 (9th Cir. 2005) does not address 1064.5. The article commented that *Hawthorne* was correctly decided to the extent that it dealt with the attachment statutes; however, the author also recognized that the *Hawthorne* court did not address the Foreign Insolvency Statute, Insurance Code § 1064.5, which would mandate a stay. "The purpose of the Act is to promote uniformity in the liquidation, rehabilitation, reorganization or conservation of insurers doing business in more than one state." *Id.*, Note 7.

> The legal effect of this Section is that claimants *must* file their claims with either the domiciliary or the ancillary receiver and not before any other tribunal, including a court. Consequently, where a reciprocal state has initiated delinquency proceedings against an insurer, a resident in another reciprocal state cannot sue the insurer in the courts of the resident's state. If the resident's state has not appointed an ancillary receiver, the only alternative available to the resident is to file a claim in the other state's delinquency proceedings.

*Id.*, Notes 11-14.

The controlling California statute delineates Plaintiffs' only options: proceed with a claim before an ancillary receiver in California (which has not been appointed), or submit a claim to the rehabilitation officer in New York under New York law. These are the only options available to Plaintiffs, as directed by the California Insurance Code. Plaintiffs agree and have, in fact, submitted their claim to the New York Liquidation Bureau. Plaintiffs have also been in favor of a stay throughout this matter. Plaintiffs stipulated to a stay following the issuance of the Orders of Rehabilitation, and offered to accept a stay of this matter for one year following the issuance of the Orders of Liquidation.

**5.      Other Courts Have Ordered The Stay Of Litigation Against Atlantic Mutual**

The question of how courts might handle the New York Supreme Court's order staying all

14

1   actions against Atlantic Mutual is no longer academic.  The United States District Court for the

2   Northern District of California, the United States District Court for the Eastern District of

3   Pennsylvania in two separate cases, the New Jersey Department of Labor and Workforce

4   Development, and the California Court of Appeal have order stays pending litigation against Atlantic

5   Mutual, to name just five venues.

6           On September 28, 2010, at the direction of Director and Chief Judge Peter Calderone, the

7   New Jersey Department of Labor and Workforce Development summarily stayed 120 active workers'

8   compensation cases pending against Atlantic Mutual in response to the New York rehabilitation

9   order.

10          On September 22, 2010, the United States District Court for the Northern District of

11  California stayed *Drazen v. Atlantic Mutual*, Case Number 10cv01371, in response to the New York

12  order.

13          On November 4, 2010, United States District Court for the Eastern District of Pennsylvania

14  stayed an action captioned *In re: Asbestos Products Liability Litigation (No. VI)*, Case No. 08-76815.

15  The *Asbestos Products* court brought a massive asbestos litigation to a halt because of the New York

16  Order of Rehabilitation.  The Court noted that the UILA "provides for a uniform, orderly and

17  equitable method of making and processing claims against defunct insurers and provides for a fair

18  procedure to distribute the assets of defunct insurers."  *In re: Asbestos Products Liability Litigation*

19  *(No. VI)*, 0210 U.S. Dist. LEXIS 117541, *7 (E.D.Pa. 2010), quoting *Ballesteros v. New Jersey*

20  *Property Liab. Ins. Guar. Ass'n*, 530 F.Supp. 1367 (D.NJ.), aff'd 696 F.2d 980 (3d Cir. 1982).  The

21  Court observed that the UILA had been adopted by both New York and Maryland, the forum for the

22  asbestos litigation.  *Id.*  The court, sitting in diversity and administering a lawsuit that dwarfs the

23  instant action, abided by the UILA and the New York Order of Rehabilitation in ordering the stay of

24  the asbestos litigation.

25          On February 18, 2011, United States District Court for the Eastern District of Pennsylvania

26  stayed an insured's breach of contract action against Atlantic Mutual in *Vane Line Bunkering, Inc. v.*

27  *Atlantic Mutual Ins. Co.*, 2011 U.S. Dist. LEXIS 16461 (E.D.Pa. Feb. 18, 2011).  The *Vane Line*

28  court ordered a stay of the action pursuant to the New York Order of Rehabilitation, exercising the

1   principles of the abstention doctrine.  The court found that the case involved a matter of substantial

2   public concern, and that the district court's exercise of jurisdiction would have a disruptive effect on

3   the state's efforts to establish a coherent public policy on that important state concern.  *Id.* at *9.  The

4   *Vane Line* court noted:

> New York has adopted a complex and thorough regulatory scheme to
> liquidate insolvent insurers, and the New York Courts have identified a
> strong New York's regulatory policy that the liquidation of insolvent
> insurers can best be accomplished through non-interference by outside
> courts.

8   *Id.* at *13, citing *Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.*, 864 F.2d 1033,

9   1041 (3d Cir. 1988).

10   The court refused to interfere with New York's right to conduct an orderly liquidation of

11   Atlantic Mutual, holding that to do so "would be highly destructive of the state's regulatory scheme.

12   *Id.* at *14.  Of particular note is the court's finding that a primary concern would be the costs to the

13   insurer's estate that would be incurred if insurer were required to continue with litigation

14   notwithstanding the New York Order of Rehabilitation bar against such litigation: "one of the chief

15   purposes of New York's regulatory scheme would be lost if an insurer in liquidation had to dissipate

16   its funds defending unconnected suits across the country."  *Id.*  Ultimately, the court concluded that

17   "any actions that we would take at this juncture in this case would blatantly disrupt New York's

18   insurance regulatory scheme."  *Id.*

19   On January 20, 2011, the California Court of Appeal for the First Appellate District, Division

20   Three, issued an Alternative Writ of Mandate ordering the Contra Costa Superior Court to set aside

21   and vacate its order denying Atlantic Mutual's request for a stay arising from the Order of

22   Rehabilitation.  See *Atlantic Mutual Ins. Co. v. Superior Court (Ins. Co. of the West)*, Docket No.

23   A130428 (Jan. 20, 2011).  The Court agreed with Atlantic Mutual that Section 1064.5 provides the

24   only two options available to a party with a claim against the insolvent insurer.

25   A refusal to stay this matter, as this Court has contemplated, would give rise to the same

26   disruption of New York's insurance regulatory scheme in which that the *Vane Line*, *Asbestos*

27   *Products*, and *Drazen* courts refused to engage.  Each of those cases involves reciprocal states that

28   have enacted the UILA.  It is worth noting that none of those Courts required a parsing of the

16

language of the UILA as each state enacted it.  Instead, the courts understood and gave effect to the purposes and intentions of the UILA and honored New York's regulatory interests in conducting an orderly liquidation of Atlantic Mutual.  The California Court of Appeal took the same view in *Atlantic Mutual v. Superior Court (Ins. Co. of the West)*.  To do otherwise would place this Court in a distinct and unsupportable minority.

Only two other cases in which a court has denied Atlantic Mutual's request for a stay have come to our attention.  Both are readily distinguishable from the instant action.  In *Katrinecz v. Zippy Technology Corp.*, 2010 U.S. Dist. LEXIS 113909 (E.D.Tex. Oct. 26, 2010), the United States District Court denied the motion to stay in a patent infringement case.  The court held that the Supremacy Clause of the US Constitution protected plaintiffs' right to pursue federal claims notwithstanding the New York order.  There are no federal questions involved in the instant matter that implicate the Supremacy Clause.  In *Connecticut v. Lombardo Brothers Contractors, Inc.*, S.C. 18462/S.C. 18463 (Dec. 8, 2010), the Connecticut Supreme Court denied a motion to stay, apparently on the basis that the party seeking the stay failed to demonstrate the predicate to a stay, that it was ever insured by Atlantic Mutual.  There is no such concern in this matter; Atlantic Mutual is the defendant.

**C.      Defendants Will Be Irreparably Harmed If The Requested Stay Is Not Granted**

Defendants will suffer irreparable harm if this Court does not grant a stay of this action. Defendants are subject to the prospect of preparing for and conducting trial in direct contravention of an order of the Supreme Court of the State of New York, which places Defendants' counsel in the untenable position of proceeding toward trial in violation of the New York court's order and without the agreement, assistance or cooperation of the client.  Defendants will be subjected to trial proceedings that Defendants will be unable to defend in order to avoid violation of the New York court's order.

**1.      The Costs Of Litigation To Defendants Are Monumental And Are A Primary Concern Of The Liquidation Process Under The UILA**

As far back as 1946, Justice Frankfurter perceived the danger of allowing preferential treatment of some claimants of insolvent insurers over others, observing that the "burden to the

---
17

liquidator of defending suits anywhere in the United States" was a legitimate concern.  Much more recently, and more pertinent to the instant action, the Court in *Vane Line* observed, in the course of ordering a stay of litigation against Atlantic Mutual, "one of the chief purposes of New York's regulatory scheme would be lost if an insurer in liquidation had to dissipate its funds defending unconnected suits across the country."

Currently, there are literally hundreds of general liability claims and thousands of workers compensation claims pending against Atlantic Mutual's insured's nationwide, and lawsuits nationwide against the company itself, some hotly contested and involving claims well into seven figures.  The cost of litigating all of these claims is substantial, particularly when considering the reality that Atlantic Mutual provided insurance coverage nationwide under its own name and under its subsidiaries' names.  The National Conference of Commissioners on Uniform State Laws understood the compelling need to avoid wasting the estate's assets in 1939, and developed the UILA to ensure that the assets of insolvent insurers would not be squandered by far-flung litigation, draining the assets of the state before the duly appointed receiver had the opportunity to administer the estate for all creditors.

A denial of Defendants' requested stay will subvert and disregard a well-established uniform statutory scheme considered and enacted by legislatures of California and New York, a statutory framework specifically designed to prevent the disorderly circumstances arising in this matter.  A denial of stay would potentially ignore clear California law and rely on non-California cases that do not address the controlling California statute as well as uniform codes that were never enacted in California, leaving Defendants (and their attorneys) in an ongoing state of contempt of the New York Orders of Liquidation.  This cannot be, and is not, the way the Uniform Insurers Liquidation Act applies or was intended to be applied.

### 2. Plaintiff Would Not Suffer Any Harm From A Stay, Whereas Defendants Will Suffer Significant Harm Is A Stay Is Not Ordered

California statutory authority is clear.  The Orders of Liquidation Rehabilitation against Atlantic Mutual and Centennial issued in New York present Plaintiffs with the sole options of presenting their claim against an ancillary receiver in California (which has not been appointed) or to

18

1   the receiver in New York.  Plaintiffs have done so, having filed a claim in New York.  Continuing

2   with the current litigation, however, is not permitted under the New York Orders of Liquidation and

3   California statutory law.

4          Ultimately, the only parties that could suffer harm as a result of these circumstances would be

5   Defendants, if this Court were to deny their request for a stay.  Plaintiffs' interests have already been

6   protected.  The Orders of Liquidation (and the Orders of Rehabilitation before them) directed

7   claimants to state their claims before the New York Liquidation Board.  Plaintiffs have properly

8   accepted the New York authorities' directions and have filed their claim in New York.  Whatever

9   portion remains of the corpus of what was once Atlantic Mutual and Centennial to which Plaintiffs

10  are found to be entitled will be adjudicated and distributed by the New York authorities.  Under the

11  Orders of Liquidation, there is nothing left of Defendants in California.  A stay will do no harm to

12  Plaintiffs whatsoever.

13         On the other hand, if a stay is not ordered, Defendants, and all of their claimants, will be

14  harmed by the needless further expenditure of resources to continue to litigate this matter in

15  California.  Defendants' estates will be depleted for no purpose, since the New York Liquidation

16  Board owns all of Defendants' assets.  Even if Plaintiffs were to fully litigate this matter to

17  conclusion in California, the New York authorities would be within their rights to disregard any

18  judgment as it was obtained in direct violation of the Orders of Rehabilitation and Liquidation.  In the

19  meantime, Defendants and their counsel would be under constant threat of sanctions for contempt of

20  the Orders of Rehabilitation and Liquidation.

21         Defendants urge this Court to exercise its discretion to order a stay in this matter, as all of the

22  factors attendant to exercising that discretion point in favor of the stay.  There is certainty of damage

23  to Defendants and all claimants to Defendants' assets if a stay is not ordered as a result of the

24  unwarranted depletion of Defendants' assets.  There is no harm of any kind that would result from a

25  stay, since Plaintiffs' interests have been protected by the Orders of Liquidation.  Finally, this matter

26  would be needlessly complicated by attempting to proceed toward trial when Plaintiffs have already

27  presented their claims in New York and Defendants would be unable to mount a defense without risk

28  of being held in contempt by the New York court.

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**

1   There is not even a fair possibility that a stay will cause harm to Plaintiffs, while the harm to

2   Defendants is obvious and significant.  Justice would not be served by proceeding with this litigation,

3   whereas the orderly administration of justice, as anticipated by the UILA adopted by both California

4   and New York, would be promoted with the issuance of a stay.

5                                    **IV.    CONCLUSION**

6           Based upon the foregoing, Defendants Atlantic Mutual Insurance Company and Centennial

7   Insurance Company respectfully request that this Court order a stay of this litigation.  Insurance Code

8   section 1064.5 compels that conclusion.

9   Dated:  December 19, 2011                    SELVIN WRAITH HALMAN LLP

10

11                                               By:  /s/ Gary R. Selvin
                                                      Gary R. Selvin
12                                                    David A. Evans
                                                      Attorneys for Defendants
13                                                    Centennial Insurance Co. and Atlantic Mutual
                                                      Insurance Co.
14

15   100793.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Memorandum of Points & Authorities in Support of Motion to Stay**

**Case No.: 2:08-CV-02558-WBS-GGH**