IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES LUARD WALLIS, *et al.*,

    Plaintiffs,　　　　　　　　　No. 2:08-cv-2558 WBS AC

    vs.

CENTENNIAL INS. CO., *et al.*,

    Defendants.　　　　　　　　　ORDER

_____/

          On January 30, 2013, the court held a hearing on defendants Atlantic Mutual Insurance, Co., Inc. and Centennial Insurance Co., Inc's ("defendants") December 20, 2012 motion to quash and motion for protective order. Joanna Mendoza appeared for plaintiffs. Gary Selvin appeared for defendants. On review of defendants' motions, the documents filed in support and opposition, the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AND ORDERS AS FOLLOWS:

          RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.    <u>Introduction</u>

          Defendant Centennial Insurance Company issued a general liability insurance policy to plaintiff Dr. Dale M. Wallis effective from January to December 1989. Beginning in

1

1993, Dr. Wallis was involved in litigation over intellectual property rights to a bovine vaccine she had developed while working for Poultry Health Laboratories ("PHL"). Several lawsuits followed, one of which involved Dr. Wallis and PHL in a dispute over rights to sell or market the vaccine. Part of that lawsuit involved a cross-claim by PHL against Dr. Wallis ("the PHL cross-action"). Dr. Wallis tendered the cross-action to defendants for defense and indemnity. Centennial accepted the tender of the claim subject to a full reservation of rights to deny coverage should additional facts so warrant. This reservation of rights triggered Dr. Wallis's right to Cumis[1] counsel that Centennial was required to pay. Joanna Mendoza, who is also appearing as plaintiffs' counsel in this action, was chosen by plaintiffs as their Cumis counsel in the PHL cross-action. The defense of the PHL cross-action proceeded for years until a dispute developed over the payment of Ms. Mendoza's bills.

In response to the defendants' allegedly improper refusal to pay attorneys' fees related to the PHL cross-action, plaintiffs filed suit in this court on October 27, 2008 against Centennial Insurance Company and Atlantic Mutual Insurance Company for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and injunctive relief. Defendants filed a counter-claim against plaintiffs seeking declaratory relief. ECF No. 9.[2] Defendants also moved to arbitrate the fee claim as required under Cal. Civ. Code § 2860[3]. Ultimately, the parties entered into a settlement to dismiss all of their claims against each other but for those claims relating to the defendants' payment of

---

[1] San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc., 162 Cal. App. 3rd 358 (Cal. Ct. App. 1984). A Cumis counsel is an attorney employed by a defendant in a lawsuit when there is an insurance policy supposedly covering the claim, but there is a conflict of interest between the insurance company and the insured defendant.

[2] Defendants ask the court to take judicial notice of their Answer and Counterclaim, as well as other documents on the docket in this case. See Defs.' Mem. of P. & A. in Supp. of Mot. to Quash at 2 n.2. The court does not need to take judicial notice of these filings because they are a part of the record in this case.

[3] Statute codifying the Cumis decision.

attorneys' fees incurred by Cumis counsel in defending against the PHL cross-action. ECF No. 57.

On September 14, 2010, defendant insurance companies were deemed insolvent by a New York state court. Selvin Decl., Ex. A. For each entity, an Order of Rehabilitation issued directing the New York Superintendent of Insurance to "take possession and/or control" of defendants' property and enjoining and restraining "[t]he officers, directors, shareholders, members, depositories, trustees, policyholders, agents, servants, employees, attorneys, managers and affiliates" of the entities from transacting business or otherwise interfering with the Rehabilitator, the New York Superintendent of Insurance, in the "possession, control and management" of the entities' property. According to each Order of Rehabilitation, the property of each entity was to be "maintain[ed]" and "preserve[d]." Id.

On April 27, 2011, the New York state court issued an Order of Liquidation for both defendant insurance companies. Selvin Decl., Ex. B. The Order of Liquidation directed the New York Superintendent of Insurance (also known as "the Liquidator") to convert the rehabilitation proceeding of the companies to a liquidation proceeding. Id. After finding that "[f]urther efforts to rehabilitate . . . would be futile," the court authorized the Liquidator "to sell, assign, or transfer any and all stocks, bonds or securities, and any real or other property of [American Mutual Insurance Company] at market price or better, or if there is no market price, at the best price obtainable at a private sale at such times and upon such terms and conditions as, in his discretion, he deems is in the best interest of the creditors of [American Mutual Insurance Company], and he is further authorized to take such steps and to make and execute such agreements and other papers as may be necessary to effect and carry out such sales, transfers and assignments." See Selvin Decl., Ex. B at 4 ¶10.

B.  Discovery Background

On July 2, 2009, the Honorable William B. Shubb issued a scheduling order setting February 8, 2010 as the discovery deadline and scheduling a jury trial for July 27, 2010.

1  See ECF No. 53.  By order dated May 1, 2012, Judge Shubb continued the discovery cut-off date
2  to September 28, 2012 and continued the trial date to February 20, 2013.  ECF No. 141.  On
3  October 31, 2012, Judge Shubb again continued the discovery deadline to November 27, 2012.
4  ECF No. 167.  Finally, by order dated December 12, 2012, the undersigned continued the
5  discovery deadline one last time to March 15, 2013 based on the agreement of the parties, and
6  limited the scope of discovery to all outstanding discovery and discovery initiated prior to the
7  November 27, 2012 deadline.  ECF No. 182.

8         The outstanding discovery includes the depositions of plaintiffs and plaintiffs' co-
9  counsel and plaintiffs' November 13, 2012 subpoenas duces tecum served on the law firm of
10 Selvin, Wraith, Halman LLP ("the Selvin firm"), the law firm currently representing defendants,
11 and the law firm of Longyear O'Dea & Lavra ("the Longyear firm"), the insurers' coverage
12 counsel before being replaced by the Selvin firm.  Selvin Delc., Exs. C-D.  Plaintiffs have also
13 issued a deposition subpoena on Gary Selvin, defense counsel here and counsel for the insurers
14 in the PHL cross-action.[4]  The outstanding discovery disputes involve the defendants' alleged
15 failure to comply with Rule 26's initial disclosure requirements, the requested entry of a
16 protective order, and defendants' responses to plaintiffs' requests for admissions.  The
17 previously-initiated discovery includes plaintiff's July 25, 2012 requests for admissions, and
18 defendants' August 9, 2012 interrogatories, requests for admissions, and requests for production
19 of documents.

20 C.     The Subpoenas Duces Tecum

21        On November 13, 2012 plaintiffs served on the Selvin law firm and the Longyear
22 law firm subpoenas duces tecum, at the top of which plaintiffs included the following language:

**PLAINTIFFS' POSITION RE: ATTORNEY-CLIENT PRIVILEGE**

The DEFENDANTS no longer exist as corporate entities.

---

[4] These subpoenas are the subject of the instant dispute.

4

> They have been dissolved and, by acknowledgment of counsel for defendants, they are not going concerns [sic] and have no employees.  The State of New York has placed whatever remains of the assets of the DEFENDANTS into the hands of an outside Liquidator pursuant to an order of liquidation by the New York Supreme Court.  This situation is identical to the handling of bank assets by the FDIC after a bank has been shut down and its assets are merely being liquidated by the government insurer or the banks.  In this regard, the attorney-client privilege does not survive and cannot be asserted in order to prohibit disclosure of otherwise responsive documents to the categories of information being requested.
>
> Therefore, there is no basis to assert the attorney-client privilege because the complete dissolution of the entities and current process of liquidating their assets by the Liquidator in New York means that the privilege no longer exists and cannot be asserted.  *FDIC v. Amundson* (D. Minn. 1988) 682 F. Supp. 981, 987 (where FDIC merely acted as a receiver and liquidator of bank's assets, FDIC could not assert former attorney-client relationship with bank's attorney for purposes of disqualification); *FDIC v. McAfee* (D. Kan. 1988) 124 F.R.D. 662, 664 ("[T]he transfer of assets to the FDIC in its corporate capacity does not transfer the attorney-client privilege.").

See Selvin Decl., Exs. C-D.  Plaintiffs also served a deposition subpoena on defense counsel, Gary Selvin.  Id. Ex. C.

On December 20, 2012, defendants filed a motion to quash these subpoenas and a motion for protective order.  Defendants argue that (1) plaintiffs did not tender the requisite fees required under Rule 45(b)(1) upon service of the Selvin deposition subpoena; (2) it is improper to depose counsel for a represented party; and (3) the subpoenas duces tecum served on the Selvin law firm and the Longyear law firm seek production of undiscoverable subject matter protected by the attorney-client privilege.

Despite the defendants' motion to quash and motion for protective order, the Longyear law firm has produced documents in response to the subpoena duces tecum.  Mendoza Decl. ¶ 15, Ex. 20; J. Disc. Statement at 28-29.  Included among those documents are communications between Longyear and Mr. Selvin, the defendants/insurers, Cumis counsel, and attorneys for the cross-complainants.  Also provided was Atlantic Mutual's "Billing Guidelines"

5

document for defense counsel.

## DISCUSSION

A. <u>Witness Fees</u>

Defendants argue first that plaintiffs failed to tender the requisite witness fees to Gary Selvin when the deposition subpoena was served. Plaintiffs admit that the witness fees were not tendered at the time of service of the subpoena, but claim that they were unaware that this was an issue for defendants and submit proof that they tendered the fee as soon as they became aware that this was a problem. <u>See</u> Supp. Mendoza Decl. ¶ 2, Ex. 21.

A subpoena is invalid when witness fees or mileage allowances are not tendered at the time the subpoenas are served. Federal Rule of Civil Procedure 45(b)(1) states: "Serving a subpoena *requires* delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1) (emphasis added). A failure to tender fees at the time of service invalidates the subpoena and the deposition testimony will not be compelled. <u>CF & I Steel Corp. v. Mitsui & Co.</u>, 713 F.2d 494, 495 (9th Cir. 1983) (finding tender 34 days after service and one week after notice of deficiency did not cure defect); <u>Mirana v. Battery TaiShing Corp.</u>, 2009 WL 290459, *1 (N.D. Cal. Feb. 5, 2009).

In this case, plaintiffs did not tender Gary Selvin's witness fees at the time the deposition subpoena was served. On this ground then the subpoena directed to Gary Selvin will be quashed.[5] In light of this ruling, the court declines to address the merits of defendants' alternative argument concerning the propriety of deposing counsel for a represented party.

B. <u>The Attorney-Client Privilege</u>

Next, as to the subpoenas duces tecum, defendants assert the attorney-client privilege. Because it is undisputed that the defendants are in liquidation proceedings in the State

---

[5] As an aside, it appears that the deposition notices served on plaintiffs' co-counsel by defendants were also missing the tender of witness fees. <u>See</u> Supp. Mendoza Decl., Ex. 21.

6

of New York, this matter turns on whether the attorney-client privilege continues to exist for an entity in a liquidation proceeding. Defendants maintain that the privilege exists and is transferred to the receiver of the liquidation proceedings. Plaintiffs, on the other hand, maintain that the privilege no longer exists because defendants no longer exist to assert the privilege.

The attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response." U.S. v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting U.S. v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)) (internal quotations omitted). The privilege, however, is strictly construed. Id. (citing U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002)). The party asserting the privilege bears the burden to prove each element of an eight-part test used to determine if information is privileged:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Id. at 607-08 (quoting In re Grand Jury Investigation, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

In an operating corporation, the attorney-client privilege is controlled by the corporation's current management. CFTC v. Weintraub, 471 U.S. 343, 351-52 (1986). "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." Id. at 349. In comparison, the mere sale of some of a corporation's assets does not necessarily transfer the corporation's attorney-client privilege. See Federal Deposit Ins. Corp. v. Amundson, 682 F. Supp. 981 (D. Minn. 1988).

Defendants argue here that the documents sought by plaintiffs continue to be protected by the attorney-client privilege despite the fact that these entities are being liquidated. In support, they cite to case law holding that, in a bankruptcy proceeding, an entity's attorney-client privilege passes to its receiver. See CFTC v. Standard Forex, Inc., 882 F. Supp. 40, 43 (E.D.N.Y. 1995). In Standard Forex, Standard Forex's former corporate manager appealed a

7

1  magistrate judge's order transferring control of the corporation's attorney-client privilege to a
2  corporate receiver. 882 F. Supp. at 40.  Finding that the magistrate's orders appointing the
3  receiver vested in the receiver the essential powers of management including the power to sue and
4  be sued on behalf of the corporation, the district court determined that the receiver, nor prior
5  management, then possessed ultimate control of the corporation. Id. at 42-43.  To avoid chilling
6  the public interest underlying the attorney-client privilege, however, the district court opined that
7  a court should not transfer the attorney-client privilege to a successor in control of the corporation
8  in the absence of a valid need to control the privilege as to attorney-client communications
9  conducted by prior management. Id. at 43.  Because transferring Forex's attorney-client privilege
10 would enable the receiver (1) to assist the plaintiff, the Commodity Futures Trading Commission,
11 in evaluating Standard Forex's violations of the Commodities Exchange Act and (2) to initiate
12 legal action against third parties to recover assets of Standard Forex, the court determined that
13 transferring Standard Forex's attorney-client privilege to the receiver was appropriate. Id.

14       Standard Forex, in turn, relied on the Supreme Court's decision in Weintraub. 471
15 U.S. 343.  In Weintraub, a Chapter 7 corporate debtor was being investigated for violating
16 commodities trading laws. Id. at 345-46.  Government officers subpoenaed the debtor's former
17 general counsel, who refused to answer the government's questions based on an asserted
18 attorney-client privilege. Id. at 346.  Consequently, the government asked the Chapter 7 trustee to
19 waive the privilege, and he did. Id.

20       The Court held that waiver was proper.  It explained that, in solvent corporations,
21 the power to waive the corporation's attorney-client privilege is normally exercised by its
22 managers, who must do so consistent with their fiduciary duty toward the corporation. Id. at 348-
23 49.  However, only active managers may exercise the privilege; former managers no longer have
24 any role. See id. at 349.  The Court held that general principle controlled for a bankrupt
25 corporation: "[b]ecause the attorney-client privilege is controlled, outside of bankruptcy, by a
26 corporation's management, the actor [within the bankruptcy context] whose duties most closely

8

resemble those of management should control the privilege in bankruptcy." Id. at 351-52.

Weintraub held that the trustee's role is closest to that of management. Once a corporation is in bankruptcy, "[t]he powers and duties of a bankruptcy trustee are extensive," with the Bankruptcy Code giving the trustee "wide-ranging management authority over the debtor." Id. at 352.

> In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are "completely ousted."

Id. at 352-53 (citations omitted). Accordingly, the debtor's directors could not "exercise the traditional management function of controlling the corporation's attorney-client privilege," and the trustee could waive the privilege over the directors' objections. Id. at 353, 358. Thus, in Weintraub, the appointment of a trustee did not destroy the attorney-client privilege, but only changed who could assert it

In this case, the defendants assert that their assets have been transferred to the New York Liquidation Bureau, which is vested with all control over the property and business of defendants and which was tasked by the New York state court with liquidating the defendants' business and affairs pursuant to New York Insurance Law Article 74, entitled "Rehabilitation, Liquidation, Conservation and Dissolution fo Insurers." Selvin Delc., Ex. B at 2 ¶ 3. In this capacity, the Liquidator "is authorized, permitted and allowed to sell, assign, or transfer any and all stocks, bonds or securities, and any real or other property of [American Mutual Insurance Company] at market price or better, or if there is no market price, at the best price obtainable at a private sale at such times and upon such terms and conditions as, in his discretion, he deems is in the best interest of the creditors of [American Mutual Insurance Company], and he is further authorized to take such steps and to make and execute such agreements and other papers as may be necessary to effect and carry out such sales, transfers and assignments." Id. at 4 ¶10.

1  Defendant argue that, because these tasks are similar to those of the trustee in a Chapter 7
2  liquidation proceeding, Weintraub controls and the court should find that the attorney-client
3  privilege continues to exist and is now transferred to the New York Liquidation Bureau.
4  　　　　　Plaintiffs, on the other hand, argue that defendants no longer exist because they are
5  not listed as active corporations with the New York Secretary of State, and that they are
6  accordingly legal non-entities with no privilege to assert.  Plaintiffs cite to two cases in support:
7  Amundson, supra, and City of Rialto v. U.S. Dep't of Defense, 492 F. Supp. 2d 1193, 1197 (C.D.
8  Cal. 2007).  In Amundson, the Federal Deposit Insurance Corporation ("FDIC") served first as
9  the receiver and then as the corporate purchaser of certain assets of a defunct bank.  The FDIC,
10 acting in its corporate capacity, argued that it stood in the legal shoes of the FDIC, acting as
11 receiver of the bank, and as such was entitled to offensively assert the attorney-client privilege in
12 order to seek disqualification of opposing counsel on conflict grounds.  The Minnesota District
13 Court rejected this argument, finding that the FDIC was not in a position analogous to that of the
14 bankruptcy trustee in Weintraub and therefore could not assert the privilege.  The court reasoned
15 that a bankruptcy trustee performs a management role similar to that of the directors who hold the
16 privilege when a corporation is functioning normally, whereas the FDIC's function in its
17 corporate capacity was more like a *liquidator* that gives "no thought or effort to reconstitute the
18 entity or to run it at all. . . ."  Amundson, 682 F. Supp. at 987 (emphasis added).
19 　　　　　In City of Rialto, the District Court for the Central District of California found that
20 a successor entity to a corporation that went bankrupt and dissolved in the 1950s "became the
21 sole shareholder of [the bankrupt company] and acquired all of [its] assets" and that the successor
22 "acquired the attorney-client privilege" at that time as well.  City of Rialto, 492 F. Supp. 2d at
23 1201.  The court concluded that an assertion of privilege by the long-dissolved company was
24 ineffective because that entity no longer existed and therefore had no privilege to assert; the
25 successor entity's failure to assert the privilege was deemed a waiver.  City of Rialto, 492 F.
26 Supp. 2d at 1196-1201.

1           Defendants distinguish Amundson on the ground that the Superintendent of
2  Insurance, unlike the FDIC, did not take control of defendants' operations as a purchaser of
3  distressed assets.  Rather, the Superintendent of Insurance acted first as a rehabilitator pursuant to
4  an Order of Rehabilitation and, when that effort proved infeasible, as a liquidator pursuant to an
5  Order of Liquidation charging it with winding down the defendants' operations.  This process is
6  not limited to the selling of assets, but includes the defense of lawsuits and the processing of
7  insurance claims.  Given their current status in liquidation proceedings, the defendants argue that
8  they are in the same position as the corporate entity in Weintraub.

9           Review of the decisions of federal courts across the country reveals a split as to
10 whether a defunct corporation may assert the attorney-client privilege.  While the attorney-client
11 privilege is generally considered to be absolute, some courts have made an exception to that
12 absolute nature in the corporate context.  That is, once the corporate entity has ceased to exist, or
13 no longer exists with any officers and directors who have the authority to assert or waive the
14 privilege protection, some courts have concluded that the privilege dies with the entity, unlike the
15 privilege held by an individual, and the lawyer can be compelled to disclose confidential
16 communications previously protected by the entity's privilege.  See Paul R. Rice, Attorney-Client
17 Privilege in the United States § 2:5, Duration of Privilege (updated 2012); Restatement (Third) of
18 Law Governing Law § 73 comment k (2012) ("When a corporation or other organization has
19 ceased to have a legal existence such that no person can act in its behalf, ordinarily the
20 attorney-client privilege terminates"); 24 Charles Alan Wright & Arthur R. Miller, Federal
21 Practice and Procedure § 5499 (2012).

22          Some courts apply this exception only to those entities that have completely
23 dissolved – i.e., completed liquidation proceedings.  See, e.g., Lewis v. U.S., 2004 WL 3203121,
24 at *5 (W.D. Tenn. 2004), order aff'd, 96 A.F.T.R.2d 2005-5300, 2005 WL 1926655 (W.D. Tenn.
25 2005) (holding that a corporation does not remain a "client" after a bankruptcy estate is closed);
26 see also Trading Tech. Intern., Inc. V. GL Consultants, Inc., 2012 WL 874322 (N.D. Ill. 2012)

(finding no attorney-client privilege for a corporation that had been defunct for over ten years); Official Committee of Administrative Claimants ex rel. LTV Steel Co., Inc. v. Moran, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011) (holding that "[a] company that has ceased normal business operations but is still going through the windup process, which can involve pursuing claims, is not "dead" for purposes of the privilege); City of Rialto, 492 F. Supp. 2d at 1196 ("[A] dissoved corporation is not entitled to assert the attorney-client privilege").

Other courts, however, see no distinction between an entity in liquidation proceedings and an entity that has simply stopped functioning (even though not yet dissolved), since in all instances the entity "is, for all intents and purposes, 'dead.'" See Bagdan v. Beck, 140 F.R.D. 660, 667 (D.N.J. 1991) ("The shell of [the corporation] continues to exists [sic] for the sole purpose of marshalling and distributing assets."). See also Gilliland v. Geramita, 2006 WL 2642525, at *3-4 (W.D. Pa. 2006) (holding that a company with no management cannot assert privilege even if it has not technically been dissolved); TAS Distributing Co., Inc. v. Cummins Inc., 2009 WL 3255297, at *2 (C.D. Ill. 2009) ("Absent some compelling reason to the contrary, the attorney client privilege does not survive the death of the corporation. As the Gilliland Court noted, this interpretation of the privilege is 'consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain.'").

Characterizing the case as "a novel question regarding the application of the attorney-client privilege for a corporation that has ceased operations," the Gilliland court considered who could assert or waive the privilege for a corporation that had not been legally dissolved but whose chief executive office had died, whose other officers had apparently resigned, and whose management included no remaining officer, manager, or director to exercise the privilege. Gilliland, 2006 WL 2642525 at *3. In concluding that the disputed documents had to be produced, the court reasoned that, in the absence of a person with authority to invoke the

privilege on behalf of the corporation, the defendant law firm could not meet its burden of proving that the privilege had been validly asserted. Id. at *4.  The court adopted the rule that attorney-client privilege is no longer viable when a corporate entity ceases completely to function, even if it has not been dissolved formally.  Id.

Having considered these cases and the arguments of the parties, the court concludes that defendants do retain the attorney-client privilege despite their status in liquidation proceedings.  The record demonstrates that, unlike the companies at issue in Gilliland and City of Rialto, defendants are neither formally dissolved nor so completely non-functioning that their attorney-client privilege is extinguished.

Moreover, the court finds that Amundson and similar cases run contrary to the holding of Weintraub.  The Amundson court held that the FDIC could not assert attorney-client privilege on behalf of the bank because its role was limited to liquidation without "thought or effort to reconstitute the entity or to run it at all," and therefore was not analogous to the managerial role performed by the bankruptcy trustee in Weintraub.  Amundson, 682 F. Supp. at 987.  The Amundson court found the distinction between liquidator and trustee dispositive of the privilege issue.  Id.  However, this analysis overlooks the fact that Weintraub involved a Chapter 7 liquidation.  Accordingly, the Supreme Court in Weintraub was itself addressing a situation where there was no thought to reconstitute the company.  Because Weintraub involved a corporation undergoing liquidation it governs the outcome in this case, and plaintiff's reliance on Amundson is unpersuasive.  This case is also readily distinguishable from City of Rialto because the entity at issue in that case had been defunct since the 1950s.  The defendants here continue to exist in the liquidation proceedings.

Accordingly, the court finds that the attorney-client privilege continues to exist for defendants.  Furthermore, at the January 30, 2013 hearing on this matter, counsel for defendants represented to the court that the New York Liquidation Bureau specifically authorized him to assert this privilege in this case.

13

The court now turns to the assertion of the privilege as to each of the categories listed in the subpoenas duces tecum. Defendants asserted blanket objection to the categories of documents requested, and did not submit a privilege log. When a witness intends to object to a subpoena on grounds of privilege, Federal Rule of Civil Procedure 45(d)(2)(A) requires the following:

> (2) ***Claiming Privilege or Protection.***
>
> (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial prearation material must:
>
> (i) expressly make that claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

These are the same standards that apply under Federal Rule of Civil Procedure 26(b)(5), which require a privilege log. See Realtime Data, LLC v. MetroPCS Texas, LLC, 2012 WL 3727304 (N.D. Cal. 2012); Dollar Tree Stores, Inc. v. Toyama Partners LLC, 2011 WL 3156871 (N.D. Cal. 2011); RSUI Indem. Co., Inc. v. Vision One, LLC, 2009 WL 5125460 (W.D. Wash. 2009); Briggs v. American Laser Centers of Vancouver, LLC, 2007 WL 2116397 (W.D. Wash. 2007).

A party meets its burden of demonstrating the applicability of the attorney-client privilege by submitting a privilege log that identifies as to each document withheld: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992). A party does not have to provide a description of the subject matter of each document to meet its burden. See id. Failure to file a privilege log could be grounds for a finding of waiver. See Ceramic Corp. of America v. Inka Maritime Corp. Inc., 163 F.R.D. 584, 587 (C.D. Cal.

1995).

Here, defendants' failure to submit a privilege log was improper. Moreover, the defendants' blanket assertion of privilege fails to meet their burden on this motion. A party claiming attorney-client privilege must identify specific information and communications that are privileged and the grounds supporting invocation of the privilege for each allegedly privileged piece of evidence. Martin, supra, 278 F.3d at 1000. Blanket assertions of the privilege are "extremely disfavored." Id.; Clarke v. Am. Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992). "Such assertions disable the court and the adversary party from testing the merits of the claim of privilege." United States v. El Paso Co., 682 F.2d 530, 541 (5th Cir. 1982). In short, defendants have failed to meet their burden of showing privilege.

The court has reviewed the categories of documents sought from the Selvin firm and the Longyear firm. Many of them are clearly outside the scope of attorney-client privilege – for example, communications between the firms and individuals and entities other than their clients. While the attorney-client privilege is potentially implicated by some of the categories of documents sought, defendants have presented practically no argument supporting their assertion of privilege as to the rest. Plaintiffs argue that most of the categories of documents in their subpoenas do not seek privileged information and the defendants cannot sufficiently meet their burden of establishing any such claim. Plaintiffs' point is well-taken. Accordingly, the Selvin firm and the Longyear firm will be directed to produce documents responsive to the subpoenas duces tecum and produce a privilege log for those documents for which they are asserting a privilege.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to quash and motion for protective order are granted in part;

2. The deposition subpoena issued as to Gary Selvin is quashed;

////

3. The Selvin firm and the Longyear firm are directed to file documents responsive to the subpoenas duces tecum within fourteen days from the date of this order. Any assertions of privilege shall be accompanied by a privilege log.

DATED: January 31, 2013.

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;wall2558.disc