1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

                         ----oo0oo----
11

DALE M. WALLIS, D.V.M., JAMES        NO. CIV. 08-02558 WBS GGH
12  L. WALLIS, and HYGIEIA
    BIOLOGICAL LABORATORIES, INC.,
13  a California Corporation,        MEMORANDUM AND ORDER RE: MOTION
                                     FOR JUDGMENT ON THE PLEADINGS
14              Plaintiffs,

15        v.

16  CENTENNIAL INSURANCE COMPANY,
    INC., a New York corporation,
17  ATLANTIC MUTUAL INSURANCE,
    CO., INC., a New York
18  corporation,

19              Defendants,
    _____/
20
    AND RELATED COUNTERCLAIMS AND
21  THIRD-PARTY COMPLAINT.
    _____/
22

23                       ----oo0oo----

24        Plaintiffs Dale M. Wallis ("Dr. Wallis"), James L.

25  Wallis ("Mr. Wallis"), and Hygieia Biological Laboratories Inc.

26  ("Hygieia") brought this action against defendants Centennial

27  Insurance Company Inc. ("Centennial") and Atlantic Mutual

28  Insurance Co., Inc. ("Atlantic Mutual") arising from plaintiffs'

                              1

veterinarian professional liability insurance policy.  Atlantic Mutual now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

I.    Factual and Procedural Background

Dr. Wallis is a research veterinarian.  (Compl. ¶ 3 (Docket No. 1).)  Plaintiffs allege that defendants issued her their standard veterinarian professional liability insurance (the "Policy").  (Id. ¶ 8.)  Dr. Wallis was the named insured under the Policy, and the Policy also covered Mr. Wallis and Hygieia because of their relationship with Dr. Wallis.  (Id.)

Beginning in 1993, Dr. Wallis was involved in a lawsuit over the intellectual property rights to a bovine vaccine she had developed while working for Poultry Health Laboratories ("PHL").  (Id. ¶¶ 11-14.)  Dr. Wallis tendered the defense of that action to defendants pursuant to the Policy, but they did not accept.  (Id. ¶ 16.)  Dr. Wallis then filed an action in this court in which defendants were found to owe Dr. Wallis a duty to defend.  (Id. ¶¶ 16-17.)

A related lawsuit ensued, which involved a complaint by Dr. Wallis against PHL and its shareholders alleging that she had created the vaccine and that PHL had defrauded her of her invention.  (Id. ¶ 18.)  In that action, PHL filed a cross-complaint against Dr. Wallis, Mr. Wallis, and Hygieia alleging unfair competition, interference with contractual relations and prospective economic advantage, misappropriation of trade secrets, and conversion.  (Id. ¶ 19.)

Defendants provided the defense to the PHL cross-complaint under a reservation of rights pursuant to the Policy.

2

1   (Id. ¶ 21.)  Due to defendants' reservation of rights, plaintiffs
2   obtained counsel of their choice, and defendants proceeded to pay
3   the legal fees and costs incurred by plaintiffs' counsel.  (Id.
4   ¶¶ 21-22.)  However, defendants have allegedly begun "to impose
5   unreasonable and illegal limitations upon the fees and costs that
6   will be paid" and have "attempt[ed] to control the litigation by
7   refusing to abide by the terms of the Policy."  (Id. ¶¶ 22-23.)

8        Plaintiffs bring claims for breach of insurance
9   contract, breach of the implied covenant of good faith and fair
10  dealing, and breach of fiduciary duty.  They also request a
11  judicial determination as to the rights and duties of the parties
12  under the Policy.  Presently before the court is Atlantic
13  Mutual's motion for judgment on the pleadings pursuant to Federal
14  Rule of Civil Procedure 12(c).  Plaintiff requests sanctions
15  under 28 U.S.C. § 1927, the court's inherent authority, or
16  Federal Rule of Civil Procedure 11, on the grounds that Atlantic
17  Mutual's motion is vexatious and frivolous.

18  II.  Discussion

19       A.   Legal Standard

20            "After the pleadings are closed--but early enough not
21  to delay trial--a party may move for judgment on the pleadings."
22  Fed. R. Civ. 12(c).  For the purposes of such a motion, the
23  factual allegations of the non-moving party are taken as true and
24  construed in the light most favorable to that party.  Fleming v.
25  Pickard, 581 F.3d 922, 925 (9th Cir. 2009) (citing Turner v.
26  Cook, 362 F.3d 1219, 1225 (9th Cir. 2004)).  "Judgment on the
27  pleadings is properly granted when there is no issue of material
28  fact in dispute, and the moving party is entitled to judgment as

3

1  a matter of law."  Id.

2          Because motions made pursuant to Rules 12(c) and
3  12(b)(6) "are functionally identical," the same legal standard of
4  review is used.  Dworkin v. Hustler Magazine Inc., 867 F.2d 1188,
5  1192 (9th Cir. 1989).  Thus, the pleading standard articulated in
6  Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009), and Bell Atlantic
7  Corp. v. Twombly, 550 U.S. 544, 554-563 (2007), applies to a
8  motion for judgment on the pleadings.  Cafasso v. Gen. Dynamics
9  C4 Sys., Inc., 637 F.3d 1047, 1054-55 & n.4 (9th Cir. 2011);
10 Lowden v. T-Mobile USA Inc., 378 F. App'x 693, 694 (9th Cir.
11 2010).  To survive a Rule 12(c) motion premised on the
12 plaintiff's failure to state a claim, the complaint must contain
13 sufficient factual matter, accepted as true, that states a claim
14 to relief that is "plausible on its face."  Iqbal, 556 U.S. at
15 678.  "A claim has facial plausibility when the plaintiff pleads
16 factual content that allows the court to draw the reasonable
17 inference that the defendant is liable for the misconduct
18 alleged."  Id.  Allegations that are merely consistent with
19 liability fall short of plausibility of entitlement to relief.
20 Id.

21      B.   Judicial Notice

22          In general a court may not consider items outside the
23 pleadings when deciding a motion for judgment on the pleadings,
24 but may consider items of which it can take judicial notice.
25 Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18
26 (9th Cir. 1999) (internal citations omitted); Barron v. Reich, 13
27 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
28 notice of facts "not subject to reasonable dispute" because they

1    are either "(1) generally known within the territorial

2    jurisdiction of the trial court or (2) capable of accurate and

3    ready determination by resort to sources whose accuracy cannot

4    reasonably be questioned." Fed. R. Evid. 201.

5           Plaintiffs have submitted a Request for Judicial Notice

6    ("RJN"), (Docket No. 206), that contains the complaint, (RJN Ex.

7    A (Docket No. 206-1)), answer, (RJN Ex. B (Docket No. 206-2)),

8    counter-complaint, (RJN Ex. C (Docket No. 206-3)), "Separate

9    Statement of Undisputed Material Facts in Support of Counter

10   Motion for Summary Judgment," (RJN Ex. D (Docket No. 206-4)),

11   Declaration of Dale M. Wallis in Support of Motion For Partial

12   Summary Judgment, (RJN Ex. E (Docket No. 206-5)), November 9,

13   1993 Memorandum and Order on cross motions for summary judgment

14   and counter-claim, (RJN Ex. F (Docket No. 206-6)), and

15   Stipulation for Dismissal with Prejudice, (RJN Ex. G (Docket No.

16   206-7)), in the action <u>Dale M. Wallis, D.V.M. v. Centennial</u>

17   <u>Insurance Company, Inc. and Atlantic Mutual Insurance Company,</u>

18   <u>Inc.</u>, Case No. Civ. 93:1322-LKK-JFM (later 93:1322-WBS-GGH).

19   Defendants do not object to the request.

20          The court will take judicial notice of these exhibits

21   with the caveat that "[w]hile the authenticity and existence of a

22   particular order, motion, pleading or judicial proceeding, which

23   is a matter of public record, is judicially noticeable, veracity

24   and validity of its contents (the underlying arguments made by

25   the parties, disputed facts, and conclusions of applicable facts

26   or law) are not." <u>United States v. S. Cal. Edison Co.</u>, 300 F.

27   Supp. 2d 964, 974 (E.D. Cal. 2004); <u>see also</u> <u>Harris v. County of</u>

28   <u>Orange</u>, 682 F.3d 1126, 1131 (9th Cir. 2012) (explaining that

1  courts may judicially notice documents on file in federal or
2  state courts and taking judicial notice of a declaration filed by
3  defendant in an earlier litigation); Lee v. City of Los Angeles,
4  250 F.3d 668, 690 (9th Cir. 2001) (court may take judicial notice
5  of another court's opinion, not for the truth of the facts
6  recited therein, but for the existence of the opinion).  The
7  court likewise takes judicial notice of the decisions in Atlantic
8  Mutual Insurance Company v. Commission of Internal Revenue, 523
9  U.S. 382 (1998), Atlantic Mutual Insurance Company v. Commission
10 of Internal Revenue, 111 F.3d 1056 (1997), and First United
11 Methodist Church of San Jose v. Atlantic Mutual Insurance
12 Company, Civ. No. 94-20036 RPA, 1995 WL 150429 (N.D. Cal. 1995).
13         The court will not take judicial notice of the fact
14 that prior to liquidation, Centennial Insurance Company was a
15 wholly-owned subsidiary of Atlantic Mutual Insurance company.
16 Plaintiffs argue that this fact is a matter of public record, but
17 point the court to no public record asserting as much.  See Fed.
18 R. Evid. 201(b) (fact may be judicially noticed if "capable of
19 accurate and ready determination by resort to sources whose
20 accuracy cannot reasonably be questioned").  In its opposition,
21 plaintiff requests that the court notice this fact because it is
22 in a Supreme Court case.  As explained above, the court will take
23 judicial notice of the case for its existence, but may not notice
24 the facts recited within for their truth.[1]  Lee, 250 F.3d at 690.

25

26        [1]    Plaintiffs state that in a declaration to an earlier
   motion in this case, an employee of Atlantic Mutual stated that
27 Atlantic Mutual is the parent company of Centennial.  (Schumann
   Decl. to Mot. to Compel ¶ 1 (Docket No. 24).)  Plaintiffs did not
28 allege this relationship in their Complaint, however, and the

1    Defendants request that the court take judicial notice

2  of the Complaint, defendants' Answer and Centennial's

3  Counterclaim and Third Party Complaint, plaintiff's Answer to

4  Centennial's Counterclaim and Third Party Complaint, and the

5  October 31, 2012 Order vacating the pretrial conference dates and

6  trial date in this case.  Plaintiffs do not oppose this request

7  and the court grants it.  See Harris, 682 F.3d at 1131.

8    C.   Breach of Contract and Breach of the Implied Covenant

9         of Good Faith and Fair Dealing (Bad Faith)

10    In general, a non-party, or nonsignatory, to an

11  insurance contract is not liable for a breach of that contract.[2]

12  See, e.g., Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th

13  Cir. 1993) (noting that a "contractual right may not be invoked

14  by one who is not a party to the agreement"); Henry v. Ass'n

15  Indem. Corp., 217 Cal. App. 3d 1405, 1416-17 (4th Dist. 1990)

16  (determining that where "[t]here was no direct contractual

17  relationship between [the parties]," there was no basis from

18  which "a breach of contract action could properly spring . . ."

19  (citing Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 576 (1973))).

20  Likewise, "a 'bad faith' action [generally] lies only against the

21  insurer as the party to the contract which gives rise to the

22
_____

23  court does not rely on this declaration in reaching its decision.

24    [2]   Atlantic Mutual gives much weight--and plaintiffs spend
    much time rebutting--the assertion that "[n]ot only is it
25  illogical and legally impossible for two different insurance
    companies to issue the same insurance policy, but the attachments
26  to the Complaint bely [sic] the impermissibly vague allegations."
    (Mem. in Supp. of Mot. 4: 25-27 (Docket No. 185-1).)  Not only
27  does Atlantic Mutual cite no authority for this apparently plain
    proposition, but it is also besides the point.  Whether or not
28  Atlantic Mutual issued the Policy is not conclusive as to whether
    it is a party to the Policy and liable for its obligations.

implied covenant." <u>Monaco v. Liberty Life Assur. Co.</u>, Civ. No. 06-07021 MJJ, 2007 WL 420139, at *4 (N.D. Cal. Feb. 6, 2007); <u>Tran v. Farmers Group, Inc.</u>, 104 Cal. App. 4th 1202, 1216-17 (1st Dist. 2002).  Thus, "without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1034 (9th Cir. 2008) (citing <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal.4th 1, 35-36 (1995)).

Here, the Complaint and attached documents show that Atlantic Mutual is not a party to the insurance contract.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); <u>Barany-Snyder v. Weiner</u>, 539 F.3d 327, 332 (6th Cir. 2008) (court properly considers exhibits attached to the complaint on a Rule 12(c) motion); <u>Callan v. Merrill Lynch & Co., Inc.</u>, Civ. No. 09-0566 BEN, 2010 WL 3452371, at *2 (S.D. Cal. Aug. 30, 2010) (court may consider documents attached to a complaint without turning the motion for judgment on the pleadings into a motion for summary judgment).  Copies of the Policy for 12/1990-12/1991 and 12/1991-12/1992 are attached to the Complaint and the upper left-hand corner of each copy bears the text "Centennial Insurance Company" followed by "A member of the Atlantic Mutual Companies".[3]  (Compl. Exs. A (Docket No. 1-1), B (Docket No. 1-2).)  There is no other insurer listed on the Policy.  Because Atlantic Mutual is not a signatory to the

---

[3]     Plaintiffs attached to the Complaint copies of the Policy relevant to the underlying litigation for which plaintiffs allege that defendants have breached their duty to defend.  (<u>See</u> Compl. ¶ 19.)

Policy, it cannot be found to be a party to the Policy on the
ground that it issued the Policy.[4]   Salido v. Allstate Ins. Co.,
Civ. No. 98-04616 CRB, 1999 WL 977944, at *1 (N.D. Cal. Oct. 21,
1999) (where policy unambiguously provided that Allstate
Indemnity insured the plaintiff's vehicle, Allstate Insurance was
not a party to the insurance contract at issue).

        Plaintiffs make numerous allegations contrary to the
conclusion that Atlantic Mutual is not a party to the Policy,
such as it issued the Policy, accepted premiums under the Policy,
and accepted the duty to defend Dr. Wallis under the Policy.
(Compl. ¶¶ 36, 43.)  These allegations, however, cannot defeat
what is indicated by the Policy itself.  Dent v. Cox Commc'ns Las
Vegas, Inc., 502 F.3d 1141, 1143 (9th Cir. 2007) (a district
court must accept as true the allegations in a plaintiff's
complaint, unless contradicted by documents properly accompanying
the complaint and incorporated therein); Garcia v. Wachovia
Mortg. Corp., 676 F. Supp. 2d 895, 900 (C.D. Cal. 2009) (a "court
may disregard allegations in the complaint if contradicted by
facts established by exhibits attached to the complaint" (quoting
Sumner Peck Ranch, Inc. v. Bureau of Reclamation, 823 F. Supp.
715, 720 (E.D. Cal. 1993)).

        General contract principles notwithstanding, there are
several doctrines that may bind a nonsignatory to a contract,
///
///

---

        [4]    Plaintiffs do not allege that Atlantic Mutual Insurance
Co., Inc., the defendant in this case, is the same entity as the
"Atlantic Mutual Companies."

9

including the presence of an agency relationship.[5]   Under

California law, an agent is defined as "one who represents

another, called the principal, in dealings with third persons."

Cal. Civ. Code § 2295.   A principal-agent relationship exists if

an agent or apparent agent holds the power to alter the relations

between the principal and third persons, if an agent is a

fiduciary, or if the principal has a right to control the conduct

of the agent with matters entrusted to him.[6]   Garlock Sealing

Techs., LLC v. NAK Sealing Techs. Corp., 148 Cal. App. 4th 937,

964 (3d Dist. 2007).

---

[5]     Plaintiffs curiously devote significant portions of
their opposition to attempting to establish that Atlantic Mutual
is the parent corporation of Centennial.   However, a parent is
not liable for the contractual obligations of its subsidiary
absent special circumstances.   The instances where a parent
corporation is liable for the acts of its subsidiary are:
        (1) where the circumstances of the organization of the
        two entities are such that the corporate form should be
        disregarded (often referred to as 'alter ego' liability);
        (2) where the subsidiary acts as an agent of the parent
        corporation; and, (3) where the parent corporation aids,
        abets or ratifies the acts of the subsidiary corporation.

E. & J. Gallo Winery v. EnCana Energy Servs., Inc., Civ. No.
03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008).
        Plaintiffs did not allege that either defendant is the
parent or subsidiary of the other and on a Rule 12(c) motion, the
court considers only the pleadings and documents properly subject
to judicial notice.

[6]     "A subsidiary corporation may be considered an agent of
the parent 'where the nature and extent of the control exercised
over the subsidiary by the parent is so pervasive and continual
that the subsidiary may be considered nothing more than an agent
or instrumentality of the parent, notwithstanding the maintenance
of separate corporate formalities.'"   Salkin v. United Servs.
Auto. Ass'n, 767 F. Supp. 2d 1062, 1068 (C.D. Cal. 2011) (quoting
Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 541
(2d Dist. 2000)).
        Had plaintiffs alleged that Atlantic Mutual is the
parent corporation of Centennial, the sufficiency of their
allegations would have to be evaluated in light of this higher
standard for establishing an agency relationship between a parent
corporation and its subsidiary.

1    Here, plaintiff has alleged that as to the relationship

2 between Atlantic Mutual and Centennial:

> [E]ach defendant[] was acting as agent, employee,
> servant, partner, and/or joint venture of the remaining
> defendant, and all the acts complained of herein were
> done within the course and scope of said agency,
> employment, servitude, partnership and/or joint venture,
> and that all acts alleged herein committed by each
> defendant were ratified and approved by the remaining
> defendant and/or done with the knowledge, consent and
> permission of the other defendant.

(Compl. ¶ 7.)

    Such bare legal conclusions are insufficient to show
that Atlantic Mutual and Centennial are in an agency
relationship, partners, and/or in a joint venture.[7] Butler v.
Resurgence Fin., LLC, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007)
(citing In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th
Cir. 1996)) (explaining that conclusory allegations and
unwarranted inferences are insufficient to defeat a motion for
judgment on the pleadings.).  Plaintiffs additionally allege that
both defendants accepted premiums for the Policy.  (Id. ¶ 43.)
They also allege that in a prior action, this court "ruled that
defendants owed Dr. Wallis a duty to defend [under the Policy],"
(id. ¶¶ 16, 25), and that defendants then tendered defense when

---

[7]    Defendants state that plaintiffs have argued that
Atlantic Mutual should be jointly liable under the alter ego
theory or by piercing the corporate veil.  Plaintiffs, however,
allege no supporting facts upon which to hang those theories and
do not attempt to argue that they have done so in their
opposition.
    Defendants also rely heavily on Henderson v. Farmers
Group, Inc., 210 Cal. App. 4th 459 (2d Dist. 2012), review
granted and opinion superseded sub nom. Henderson v. Farmers
Group, 291 P.3d 327 (Cal. 2013).  It is no longer proper to cite
that case, however, because review has been granted.  Trader
Joe's Co. v. Progressive Campaigns, 73 Cal. App. 4th 425, 430 n.2
(1st Dist. 1999).

1   PHL filed a cross-claim in a later action, (id. ¶¶ 21, 25).

2   Plaintiffs also allege that the defendants paid the fees and

3   costs incurred by plaintiffs in the PHL action and that "[b]y

4   agreement the defendants allowed plaintiffs' attorneys to send

5   their bills directly to the insurance company for payment." (Id.

6   ¶ 22.)

7         These additional factual allegations, however, do not

8   go to establishing that Atlantic Mutual is the agent, partner, or

9   joint venturer of Centennial.  The court's best guess is that

10  plaintiffs are relying on the theory that Atlantic Mutual is

11  Centennial's undisclosed principal.  "A principal is undisclosed

12  if, when an agent and a third party interact, the third party has

13  no notice that the agent is acting for a principal."  Restatement

14  (Third) Of Agency § 1.04 (2006).  When an agent with actual

15  authority makes a contract on behalf of an undisclosed principal,

16  the principal is a party to the contract (unless excluded by it),

17  as are the agent and the third party.  Id. § 6.03(1)-(2).  If the

18  principal is a party to the contract, it and the third party have

19  the same rights, liabilities, and defenses against each other as

20  if the principal had made the contract personally.  Id. §

21  6.03(3).  Actual authority arises when the principal manifests it

22  assent to an agent that the agent take action on the principal's

23  behalf.  Id. § 3.01.

24        Fatally, plaintiffs have not alleged that Atlantic

25  Mutual gave actual authority to Centennial to enter into an

26  insurance contract with plaintiffs as its agent.  It would be

27  difficult for plaintiffs to have done so, given that they fail to

28  differentiate between the defendants at any point in the

12

1  Complaint.  Nor have plaintiffs alleged any facts even suggesting

2  that such authority was given, like a statement from either party

3  acknowledging an agency relationship.  Instead, plaintiffs'

4  allegations depict Centennial merely acting consistent with its

5  own obligations on the Policy, rather than in a manner consistent

6  with being Atlantic Mutual's agent.  While it is entirely

7  possible that Atlantic Mutual was Centennial's undisclosed

8  principal, or even its disclosed principal, "plaintiffs here have

9  not nudged their claims across the line from conceivable to

10 plausible."[8]  Twombly, 550 U.S. at 570.

11         Because a Rule 12(c) motion is essentially equivalent

12 to a Rule 12(b)(6) motion, a district court may "dispos[e] of the

13 motion by dismissal rather than judgment."  Sprint Telephony PCS,

14 L.P. v. County of San Diego, 311 F. Supp. 2d 898, 902-03 (S.D.

15 Cal. 2004).  Courts have discretion to grant leave to amend, but

16 leave is generally only denied if it clear that the deficiencies

17 of the complaint cannot be cured by amendment.  Norton v.

18 Independence Tech., LLC, Civ. No. 2:10-03218, 2011 WL 3584491, at

19 *2 (E.D. Cal. Aug. 15, 2011) (England, J.)  Here, because it is

20 not clear that plaintiffs cannot cure their Complaint,

21 plaintiffs' claims for breach of contract and breach of the

22 implied covenant of good faith and fair dealing against Atlantic

23 Mutual must be dismissed with leave to amend.

24 ─────────────────

25        [8]   Plaintiffs' reliance on First United Methodist Church
   of San Jose v. Atl. Mut. Ins. Co., Civ. No. 94-20036 RPA, 1995 WL
26 150429 (N.D. Cal. Mar. 29, 1995), is misplaced.  That case
   involved a motion for summary judgment and did not consider
27 whether the plaintiff's allegations were sufficient to allege a
   claim for breach of contract, bad faith, or breach of fiduciary
28 duty against a party that is a nonsignatory to the contract.
   First United, 1995 WL 150429, at *10-11.

1        D.   <u>Declaratory Relief and Fiduciary Duty</u>

2             Plaintiffs allege that defendants acquired a fiduciary

3  duty by issuing the Policy and accepting premiums for it.

4  (Compl. ¶ 43.)  California law is unsettled as to whether there

5  is an action for the breach of fiduciary duty between an insured

6  and insurer.  <u>See, e.g.</u>, <u>Casey v. Metro. Life Ins. Co.</u>, 688 F.

7  Supp. 2d 1086, 1100-01 (E.D. Cal. 2010) (adopting "the sounder

8  approach that a breach of fiduciary duties is analyzed under the

9  covenant of good faith and fair dealing" and therefore "a

10 separate claim does not exist for breach of a fiduciary duty").

11 The court need not resolve this issue, however, because

12 plaintiffs have not sufficiently alleged that Atlantic Mutual is

13 a party to the Policy and liable for obligations under it as

14 plaintiffs' insurer.  <u>See</u> <u>Negrete v. Fid. & Guar. Life Ins. Co.</u>,

15 444 F. Supp. 2d 998, 1003 (C.D. Cal. 2006) (to plead a claim for

16 breach of fiduciary duty, plaintiff must allege the existence of

17 a fiduciary relationship giving rise to a fiduciary relationship

18 (citing <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101 (1991))).

19             Finally, because plaintiffs have not pled any

20 cognizable claims for relief against Atlantic Mutual, their

21 request for declaratory relief against Atlantic Mutual also

22 falls.  <u>See</u> <u>Winding v. Cal-W. Reconveyance Corp.</u>, Civ. No.

23 10-0041, 2011 WL 221321, at *11 (E.D. Cal. Jan. 24, 2011)

24 (O'Neill, J.) ("The failure of the complaint as a whole

25 demonstrates the absence of an actual controversy subject to

26 declaratory relief.  A declaratory relief action 'brings to the

27 present a litigable controversy, which otherwise might only be

28 tried in the future.'" (quoting <u>Societe de Conditionnement en</u>

14

1    <u>Aluminium v. Hunter Eng. Co.</u>, 655 F.2d 938, 943 (9th Cir.

2    1981))).  Accordingly, plaintiffs' claim for breach of fiduciary

3    duty and request for declaratory relief against Atlantic Mutual

4    must be dismissed with leave to amend.

5         E.   <u>Collateral Estoppel and Judicial Estoppel</u>

6         In a diversity action, the court must apply the

7    collateral estoppel rules of the forum state.  <u>Bates v. Union Oil</u>

8    <u>Co. of Cal.</u>, 944 F.2d 647, 649 (9th Cir. 1991).  Therefore,

9    California law applies to the issue of collateral estoppel in

10   this case.  Under California law, the preclusive effect of a

11   prior federal court judgment is resolved according to federal

12   law.  <u>Lumpkin v. Jordan</u>, 49 Cal. App. 4th 1223, 1230 (1st Dist.

13   1996).

14        To preclude relitigation of an issue under the doctrine

15   of collateral estoppel: "(1) the issue at stake must be identical

16   to the one alleged in the prior litigation; (2) the issue must

17   have been actually litigated in the prior litigation; and (3) the

18   determination of the issue in the prior litigation must have been

19   a critical and necessary part of the judgment in the earlier

20   action."  <u>Clark v. Bear Stearns & Co., Inc.</u>, 966 F.2d 1318,

21   1320-21 (9th Cir. 1992).  "The party asserting preclusion bears

22   the burden of showing with clarity and certainty what was

23   determined by the prior judgment."  <u>Id.</u> at 1321.  Collateral

24   estoppel does not apply if there is any doubt as to whether an

25   issue was actually litigated in the prior action.  <u>Steen v. John</u>

26   <u>Hancock Mut. Life Ins. Co.</u>, 106 F.3d 904, 912 (9th Cir. 1997).

27   Trial courts have broad discretion to determine when to apply

28   offensive collateral estoppel.  <u>Parklane Hosiery Co. v. Shore</u>,

1  439 U.S. 322, 331 (1979).

2       Plaintiffs request that the court apply collateral
3  estoppel, or claim preclusion, to prevent Atlantic Mutual from
4  arguing that it is not a party to the Policy with Centennial.
5  Plaintiffs first request that the court apply preclusive effect
6  to a stipulated dismissal with prejudice from an earlier action
7  before this court that plaintiffs contend involved the same
8  parties and the same Policy. (See RJN Ex. G.)  Under federal
9  preclusion law, however, in a dismissal with prejudice, none of
10 the issues is actually litigated.  In re Daley, 776 F.2d 834, 838
11 (9th Cir. 1985).  Thus, the second prong of the collateral
12 estoppel test cannot be met and the court will not give
13 preclusive effect to the stipulated dismissal with prejudice.

14      Plaintiffs next direct the court to a summary judgment
15 order issued by this court in the same action. (See RJN Ex. F.)
16 "An insurance company's duty to defend arises from the
17 contractual provisions contained in its standard comprehensive or
18 commercial general liability insurance policies." Zurich Ins.
19 Co. v. Smart & Final Inc., 996 F. Supp. 979, 985 (C.D. Cal. 1998)
20 (citing Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal. 4th 38,
21 56 (1997)).  In its summary judgment order, this court never
22 decided, nor did it intend to decide, whether Atlantic Mutual was
23 a party to the insurance contract at issue.  Rather, it
24 considered whether the allegations of the underlying action
25 against Dr. Wallis gave rise to a duty to defend under the
26 Policy. (RJN Ex. F at 10.)  The court never stated on what
27 theory Atlantic Mutual was liable under the Policy; the issue
28

1  appears not to have been raised.[9]

2          Furthermore, the Supreme Court has cautioned against
3  applying offensive collateral estoppel because "[i]f a defendant
4  in the first action is sued for small or nominal damages, he may
5  have little incentive to defend vigorously, particularly if
6  future suits are not foreseeable." Parklane Hosiery Co., 439
7  U.S. at 330. Here, where Atlantic Mutual and Centennial are at
8  the least related companies, Atlantic Mutual might have known
9  that Centennial would accept the duty to defend and that even if
10 the court found Atlantic Mutual liable under the Policy,
11 Centennial would cover any expenses. It might also not have
12 reasonably expected future suits involving Dr. Wallis. For both
13 reasons, it is not surprising--nor Machiavellian, as plaintiffs
14 suggest--that Atlantic Mutual did not contest that it is a party
15 to the Policy until this point. Plaintiffs have not met their
16 burden of showing that the issue of whether Atlantic Mutual is a
17 party to the Policy had been decided in the earlier action.
18 Accordingly, the court will not give its earlier order any
19 preclusive effect at this time.

20         Judicial estoppel bars a party from taking inconsistent
21 positions in the same litigation. New Hampshire v. Maine, 532
22 U.S. 742, 749 (2001); Morris v. State of Cal., 966 F.2d 448, 452
23 (9th Cir. 1991). The court must have relied on the party's

24

25         [9]    Plaintiff also points to allegations in the counter-
26 claim filed by defendants in that case, in which defendants
   alleged that they issued and renewed a policy of veterinarian
27 professional liability insurance to Dr. Wallis. (RJN Ex. C ¶ 6.)
   Plaintiff, however, directs the court to no case holding that
28 mere allegations in a counter-claim are given preclusive effect
   when the issue they implicate is not decided in the litigation.

17

previously inconsistent statement to apply the doctrine. _Interstate Fire & Cas. Co. v. Underwriters at Lloyd's_, 139 F.3d 1234, 1239 (9th Cir. 1998). Plaintiffs request that the court bar Atlantic Mutual from taking an inconsistent position regarding whether it is a party to the Policy. As to this litigation, plaintiffs point to defendants' admission that the court ruled that they owed Dr. Wallis a duty to defend in an earlier action. (Answer ¶ 17 (Docket No. 9).) They argue that this admission contradicts Atlantic Mutual's argument on this motion that it is not a party to the Policy.

However, there is a difference between admitting that the court ruled defendants had the duty to defend and admitting that they actually had that duty. If the court ruled Atlantic Mutual owed plaintiff a duty to defend, the court may have been wrong. There could be many reasons that such a ruling might have been mistaken. The parties may not have called to the court's attention the different roles played in the transaction by Centennial and Atlantic Mutual. Alternatively, the court may have misspoke. Or the court may have been just plain wrong, and while its ruling may have been the law of that case it is not the law of this case. There is also a difference between admitting to the fact that the court found that Atlantic Mutual had a duty to defend under the Policy and admitting to being a party to the Policy. If Atlantic Mutual simply declined to contest its liability under the Policy in the earlier action, the fact that Atlantic Mutual was found to have a duty to defend is not necessarily inconsistent with Atlantic Mutual's position in the instant motion. Most importantly, the court has not relied on

18

1  the admission.   Thus, it declines to apply judicial estoppel.

2        F.   <u>Sanctions</u>

3        "A motion for sanctions must be made separately from

4  any other motion and must describe the specific conduct that

5  allegedly violates Rule 11(b)."   Fed. R. Civ. P. 11(c)(1).   It

6  must not be filed until 21 days after it is served pursuant to

7  Rule 5.   <u>Id.</u> (c)(2).   Plaintiffs failed to comply with these

8  requirements by requesting Rule 11 monetary and issue sanctions

9  in their opposition.   They must therefore rely on the Court's

10 inherent authority or 28 U.S.C. 1927 to seek sanctions.   Section

11 1927 provides, in relevant part: "Any attorney . . . who so

12 multiplies the proceedings in any case unreasonably and

13 vexatiously may be required by the court to satisfy personally

14 the excess costs, and attorney's fees reasonably incurred because

15 of such conduct."   28 U.S.C. 1927.   To award sanctions under both

16 the court's inherent authority and § 1927 requires evidence of

17 bad faith.   <u>Fink v. Gomez</u>, 239 F.3d 989, 992 (9th Cir. 2001); <u>In</u>

18 <u>re Keegan Mgmt. Co., Sec. Litig.</u>, 78 F.3d 431, 436 (9th Cir.

19 1996).

20        There is insufficient proof of bad faith to award

21 sanctions at this time.   Plaintiffs argue that Atlantic Mutual

22 acted in bad faith because its counsel declined plaintiffs'

23 counsel's request that the instant motion be withdrawn and

24 because its motion is frivolous and vexatious.   However, given

25 the plain language of the Policy, plaintiffs' insufficient

26 allegations of agency, and the court's finding that neither

27 collateral nor judicial estoppel applies, Atlantic Mutual's

28 motion presented a close question on which it ultimately

1   prevailed.

2           Defendants' arguments were thus not vexatious or
3   frivolous, but well-taken.  Although Atlantic Mutual has not
4   contested its liability under the Policy before, the court will
5   not penalize the choice to wait to do so until this point by
6   issuing sanctions.  This is especially so because of the lesser
7   motivation Atlantic Mutual may have had to defend itself in the
8   earlier litigation.

9           Atlantic Mutual appears to have taken some actions in
10  the past consistent with plaintiffs' contention that it is a
11  party to the Policy.  Its motion may therefore be disingenuous.
12  But it may also be good lawyering, for the reasons just
13  explained.  The call is close enough that the court cannot find
14  that Atlantic Mutual's motion was made in bad faith.
15  Accordingly, plaintiffs' request for sanctions will be denied.

16          IT IS THEREFORE ORDERED that Atlantic Mutual's motion
17  for judgment on the pleadings be, and the same hereby is, GRANTED
18  with leave to amend.  Plaintiffs have twenty days from the date
19  of this Order to file an amended complaint, if they can do so
20  consistent with this Order.

21          IT IS FURTHER ORDERED that plaintiffs' request for
22  sanctions be, and the same hereby is, DENIED.

23  DATED:  February 27, 2013

25  WILLIAM B. SHUBB
26  UNITED STATES DISTRICT JUDGE

20